# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **UNIVERSITAS EDUCATION, LLC** ) | |
| ) | |
| **Plaintiff** ) | **CIVIL ACTION NO.** |
| ) | **3:20-cv-00738-JAM** |
| **vs.** ) | |
| ) | |
| **BENISTAR, et al** ) | |
| ) | **AUGUST 3, 2020** |
| **Defendants** ) | |

## Defendants Alliance Charitable Trust, Phoenix Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, and Carpenter Charitable Trusts Motion to Dismiss Plaintiff's Complaint

Pursuant to Rules 12(b)(1), 12(b)(2),(5), and (6) of the Federal Rules of Civil Procedure, the Defendants, Alliance Charitable Trust, Phoenix Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, and Carpenter Charitable Trusts, (hereinafter known as "the Defendant Trusts") by and through its undersigned counsel, respectfully move this Court to Dismiss the Plaintiff's complaint because the Plaintiff has failed to properly serve process, the Plaintiff has failed to state a claim upon which relief can be granted, and this court lacks personal jurisdiction over the Defendant Trusts. As set forth in the contemporaneously filed supporting memorandum of law, the Plaintiff's allegations against the Defendant Trusts cannot be maintained and must be dismissed.

Wherefore, the Defendant Trusts respectfully move this Court to grant this motion and dismiss the counts. A Memorandum is attached hereto. Oral Argument is requested.

Respectfully Submitted
THE DEFENDANTS,

By:  /s/ Grayson Colt Holmes_____
Grayson Colt Holmes
Federal Bar No.: ct30111
Ouellette, Deganis, Gallagher & Grippe LLC
143 Main Street
Cheshire, CT 06410
Phone: (203) 272-1157
Fax: (203) 250-1835
Email: gholmes@odglaw.com

## CERTIFICATION

I hereby certify that on this 3rd day of August, 2020, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

By: /s/ Grayson Colt Holmes
Grayson Colt Holmes
Federal Bar No.: ct03111

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **UNIVERSITAS EDUCATION, LLC** | ) | |
| | ) | |
| **Plaintiff** | ) | **CIVIL ACTION NO.** |
| | ) | **3:20-cv-00738-JAM** |
| **vs.** | ) | |
| | ) | |
| **BENISTAR, et al** | ) | |
| | ) | **AUGUST 3, 2020** |
| **Defendants** | ) | |

**Defendants Alliance Charitable Trust, Phoenix Charitable Trust, Atlantic Charitable Trust, Avon Charitable Trust, and Carpenter Charitable Trusts Memorandum in Support of their Motion to Dismiss Plaintiff's Complaint**

Pursuant to Rules 12(b)(1), 12(b),(2),(5) and (6) of the Federal Rules of Civil Procedure,

the Defendants Trusts move to dismiss the Plaintiff, Universitas's, allegations against it.

Respectfully Submitted
THE DEFENDANTS,

By: _/s/ Grayson Colt Holmes_
Grayson Colt Holmes
Federal Bar No.: ct30111
Ouellette, Deganis, Gallagher & Grippe LLC
143 Main Street
Cheshire, CT 06410
Phone: (203) 272-1157
Fax: (203) 250-1835
Email: gholmes@odglaw.com

**TABLE OF CONTENTS**

I.   INTRODUCTION ...............................................................................1

II.  LAW AND ARGUMENT ....................................................................1

     A. THE PLAINTIFF HAS FAILED TO PROPERLY SERVE PROCESS ON THE
        DEFENDANT TRUSTS ...................................................................... 1

     B. THE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE
        GRANTED ........................................................................... 6

     C. "CONSTRUCTIVE TRUST" IS NOT A CAUSE OF ACTION ....................... 9

     D. PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT, FAILS TO STATE ANY
        ENTITLEMENT TO RELIEF ............................................................. 10

     E. "LIABILITY FOR ATTORNEYS' FEES" IS NOT A COGNIZABLE CAUSE OF
        ACTION ......................................................................... 12

     F. THE COMPLAINT MUST BE DISMISSED FOR A LACK OF DIVERSITY
        JURISDICTION ....................................................................... 13

III. CONCLUSION.............................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Watt,* 138 U.S. 694 (1891). ................................................................. 14, 15

*Arbaugh v. Y&H Corp.,* 546 U.S. 500 (2006). .............................................................. 13

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868  (2009) .................................. 6

*Baltas v. Frenis, 2019 WL 1552915, (D. Conn. Apr. 10, 2019)* .................................. 12

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............... 6, 7

*Bender v. Williamsport Area Sch. Dist., 475 U.S. 534,*
*106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)* ...................................................................... 8

*Capron v. Van Noorden,* 6 U.S. 126, 2 Cranch 126 (1804). ........................................... 14

*Carney v. Lopez,* 933 F. Supp. 2d 365 (D. Conn. 2013)................................................. 9

*Coan v. Dunne,* 2019 WL 1976146 (D. Conn. May 3, 2019)........................................ 9

*City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, (2d Cir.2011). ............................ 8

*Cohen v. Bayne,* 28 Conn.Sup. 233, 257 A.2d 38 (1969)............................................. 3

*Conolly v. Taylor, 27 U.S. 556, 2 Pet. 556, (1829),*…………………………......…………..……14

*Crawford v. Cuomo,* 796 F.3d 252 (2d Cir. 2015)........................................................... 6

*Dickerson v. Napolitano,* 604 F.3d 732(2d Cir. 2010) …………………………….………….1

*East Lyme v. Huntington, 22 Conn.Sup. 288, 169 A.2d 752 (1961)*……………………………3

*Epperson v. Entm't Express, Inc.,* 242 F.3d 100 (2d Cir.2001)…………………..………….8-9

*Harris v. American Legion, 162 F. Supp. 700 (1958)*…………..……………………….………13

*Hibner v. Bruening, 7*8 Conn.App. 456, 828 A.2d 150 (2003). ................................... 2

*Grayson v. Wofsey, Rosen, Kweskin & Kuriansky,* 40 Conn.Sup. 1, 478 A.2d 629 (1984) .......... 3

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.,* 438 F.3d 298, (3d Cir. 2006)................ 7

*In re A.N. Frieda Diamonds, Inc., 2020 WL 2059907, (Bankr. S.D.N.Y. Apr. 29, 2020)*........... 11

*In re Handy & Harman Ref. Group*, 266 B.R. 24 (Bankr. D. Conn. 2001)................................. 11

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391
 (1994)......................................................................................................................... 9

*Lange v. Bianco, 2004 Conn. Super. LEXIS 2850 (Sept. 30, 2004)* ................................. 2

*Loubier Irrevocable Trust v. Loubier, et al, 858 F.3d 719, (2d Cir. 2017)* ................................. 14

*McNutt v. General Motors Acceptance,* 298 U.S. 178 (1936)..................................................... 13

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560 (2d Cir. 1996). ..........................1

*Mollan v. Torrance,* 22 U.S. 537, 9 Wheat. 537, 539 (1824)........................................14

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 108 S. Ct. 404, 98 L. Ed. 2d 415
 (1987)............................................................................................................1

*Peacock v. Thomas,* 516 U.S. 349, 116 S. Ct. 862 (1996)....................................................... 7,8,9

*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549 (1987) ................................. 8

*Plonski v. Halloran,* 36 Conn.Sup. 335, 420 A.2d 117 (1980)......................................... 3

*Reed v. McCready, 2014 WL 2854001 (Conn. Super. May 16, 2014)*........................................... 9

*Reid v. Dan Yant, Inc., 2018 WL 8014197.*...................................................................... 5

*Romita v. Anchor Tank Lines, LLC,* No. 11 Civ. 9641 (DAB), 2013 WL 432903, (S.D.N.Y. Feb.
 1, 2013) ...................................................................................................................... 7

*Smith v. Smith, 150 Conn. 15, 183 A.2d 848 (1962)* ...................................................... 2

*The State of Rhode Island v. The State of Massachusetts, 37 U.S. 657, 9 L. Ed. 1233 (1838),* .... 13

*Torres v. Gaines,* 130 F. Supp. 3d 630 (D. Conn. 2015)........................................................2

*Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433 (2009) ............................ 10

*Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.,*
 *843 F.3d 561 (2d Cir. 2016).* ...................................................................................... 6

*United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave.
 Greenwich, Connecticut,* 718 F. Supp. 2d 215 (D. Conn. 2010)............................................ 10

*United States v. Benitez,* 779 F.2d 135 (2d Cir. 1985)................................................................. 11

*United States v. Schwimmer,* 968 F.2d 1570 (2d Cir. 1992)....................................................... 11

*Universitas Educ., LLC v. Nova Group, Inc.*, No 11 CIV. 1590-LTS-HBP, 2012 WL 204592 (S.D.N.Y. June 5, 2012)................................................................................................................ 2

*Williamsport Area Sch. Dist.,* 475 U.S. 534, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986).................. 8

**Statutes**

28 U.S.C. § 1962................................................................................................................................ 8

29 U.S.C. § 1144(a);......................................................................................................................... 8

Conn. Gen. Stat. § 34-508................................................................................................................ 2

Conn. Gen. Stat. § 52-57........................................................................................................... 2, 3, 4

Conn. Gen. Stat. § 52-59b................................................................................................................ 4

N.Y. CPLR § 5018............................................................................................................................ 8

**Rules**

Fed. R. Civ. P. 4 (e)(1)..................................................................................................................... 2

Fed. R. Civ. P. 4(m)......................................................................................................................... 5

Fed. R. Civ. P. 5(a)(1))..................................................................................................................... 5

Fed. R. Civ. P. 5(b)(2)...................................................................................................................... 5

Fed. R. Civ. P. 9(b).......................................................................................................................... 11

Fed. R. Civ. P. 12(b)(1).................................................................................................................... 5

Fed. R. Civ. P. 12(b)(5).................................................................................................................... 5

Fed. R. Civ. P. 12(b)(6).................................................................................................................. 6,7

**Treatises**

*Moore's Federal Practice* § 5.03 (3d ed. 2018)............................................................................... 5

## INTRODUCTION

The Plaintiff, Universitas, has brought this action against the Defendant Trusts in an attempt to enforce a money judgment it obtained nine years ago in the Southern District of New York against Nova Group, Inc. *See Universitas Educ., LLC v. Nova Grp., Inc.,* No 11 CIV. 1590-LTS-HBP, 2012 WL 204592 (S.D.N.Y. June 5, 2012). The Defendant Trusts were not parties to that action, nor has any court determined the Defendant Trusts to be judgment debtors in the Universitas case. Significantly, Judge Swain in the Southern District of New York has continually rejected the arguments made here that have been made repeatedly over the last nine years. *See Judge Swain's Order Dismissing Plaintiff's Complaint attached as Exhibit One.*

As argued below, the Plaintiff's Complaint should be dismissed because service of process as to the Defendant Trusts is insufficient, Plaintiff has failed to state a claim for which relief may be granted, and this Court lacks diversity jurisdiction of the parties.

## LAW AND ARGUMENT

### A. THE PLAINTIFF HAS FAILED TO PROPERLY SERVE PROCESS ON THE DEFENDANT TRUSTS

Valid service is required before a federal court may exercise personal jurisdiction over a defendant. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S. Ct. 404, 98 L. Ed. 2d 415 (1987). It is the plaintiff's burden to prove valid service when a defendant moves to dismiss under Rule 12(b)(5) of the Federal Rules of Civil Procedure. *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010). Prior to discovery, a plaintiff may establish personal jurisdiction with a prima facie showing. *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). In assessing a motion to dismiss for insufficient service of process, a court must look to matters outside the complaint, such as the steps taken by the plaintiff to

effectuate service, to determine whether it has jurisdiction. *Torres v. Gaines*, 130 F. Supp. 3d 630, 635 (D. Conn. 2015).

FRCP Rule 4(h) further authorizes a party to effectuate service by "following state law for service a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." See *Id.*; Fed. R. Civ. P. 4(e)(1). Connecticut General Statutes § 52-57 governs service of process upon individuals, municipalities, corporations, partnerships and voluntary associations. The statute does not provide for a method of service on a trustee, and therefore, the proper method of service should fall within the "catch all" provision of C.G.S § 52-57(a).[1] *See e.g. Lange v. Bianco, 2004 Conn. Super. LEXIS 2850.* There are two methods of service on a defendant within the state: (1) personal, "in hand" service, by actual manual delivery to the defendant himself or (2) abode service, by leaving a copy of the process at the defendant's usual place of abode. *See Smith v. Smith*, 150 Conn. 15, 19, 183 A.2d 848 (1962).

The Plaintiff in this case has not claimed "in hand" service. Therefore, the inquiry for effect service of process must be whether process was served at the Defendant's "usual place of abode."

"Abode service . . . serves . . . the dual function of conferring jurisdiction and giving notice . . . Its chief purpose is to ensure actual notice to the defendant that the action is pending." *Smith v. Smith*, 150 Conn. 15, 19, 183 A.2d 848 (1962). It requires that "process be served by leaving it at the usual place of [the defendant's) abode." (Internal quotation marks omitted.) *Hibner v. Bruening*, 78 Conn.App. 456, 463, 828 A.2d 150 (2003). "Abode service is not

---

[1] General Statutes § 34-508 addresses service of process on statutory trustees, however, it cannot be determined based on the pleadings, whether the Defendant Trusts qualify as a statutory trust. Further, that statute does not expand on the permissible methods of service articulated under General Statutes § 52-57(a).

effective if it is left at an address that is not the usual address of the party served, and an action commenced by such improper service must be dismissed." *Id.*

"Abode for purposes of General Statutes § 52-57(a) is the place where the defendant would most likely have knowledge of service of process and is generally recognized as the place where he is living at the time of service." *Grayson v. Wofsey, Rosen, Kweskin & Kuriansky*, 40 Conn.Sup. 1, 3, 478 A.2d 629 (1984). Connecticut courts are reluctant to recognize abode service where process is not left for the defendant at the place he is living at the time service is made, even in cases where the defendant receives actual notice of the action. *See East Lyme v. Huntington*, 22 Conn.Sup. 288, 169 A.2d 752 (1961) (determining dwelling where defendant maintained an office is not equivalent of defendant's usual place of abode); see also *Grayson v. Wofsey, Rosen, Kweskin & Kuriansky*, 40 Conn.Sup. 1, 3, 478 A.2d 629 (refusing to acknowledge service left at defendant's law firm address as proper abode service); *Cohen v. Bayne*, 28 Conn.Sup. 233, 257 A.2d 38 (1969) (finding improper abode service where process was left at defendant's previous residence even though defendant had actual notice of action). Service of process has been found where a copy of process was left for an out of state defendant in a hotel room where he was temporarily staying. *See Plonski v. Halloran*, 36 Conn.Sup. 335, 420 A.2d 117 (1980).

In its complaint, the Plaintiff has alleged that "Daniel Carpenter is the sole trustee "for all" the Defendant Trusts and that the Defendant Trusts "are alter egos of Mr. Carpenter" *See Plaintiff's Complaint, ¶¶ 126, 130.* In an effort to serve the Complaint on the Defendant Trusts, the Plaintiff had Robert W. Arsenault, a Connecticut State Marshal,:(1) "leave two verified true and attested copies" of the Summons, Complaint, and other materials at "the office of the Secretary of State, whom is the duly authorized Statutory agent to accept service on behalf of the

within named Defendant;" (2) "deposit[] at the post office of West Hartford a verified true and attested copy" of the Summons, Complaint, and other materials "postage paid, certified mail, return receipt requested, addressed to" the Defendant Trusts "At 10 Tower Lane, Avon, CT 06001-4211;" and (3) "by special direction of the Plaintiff's Attorney, and pursuant to Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure, . . . made due and legal service" of the Summons, Complaint, and other materials, "by leaving a verified true and attested copy at the Clerk's Office of the United States District Court, whom is the duly authorized to accept service on behalf of" the Defendant Trusts. *See Summons*, pp 3-9.

This is not, however, the usual place of abode of Daniel Carpenter. *See Declaration of Molly Carpenter attached as Exhibit Two.* In fact, the property where the Plaintiff served process is not a residential property at all. *Id.* The Plaintiff's failure to leave copies of the process at the abode of Daniel Carpenter, as the sole trustee of the Defendant Trusts renders ineffective any attempted abode service on the Defendant Trusts.

Likewise, depositing the summons and complaint with the Secretary of State's Office in Hartford is insufficient to establish personal jurisdiction over the Defendant Trusts. The Plaintiff has alleged that the Defendant Trusts are "citizens of Connecticut." *See Plaintiff's Complaint ¶¶ 6-10.* General Statutes § 52-59b provides that a *nonresident individual* who transacts business within the state or commits a tortious act within the state "shall be deemed to have appointed the Secretary of the State as its attorney and to have agreed that any process in any civil action brought against the nonresident individual . . . may be served upon the Secretary of the State." Therefore, this court does not have jurisdiction over the Defendant Trusts pursuant to § 52-59b, because the Defendant Trusts are alleged to be Connecticut Citizens. General Statutes §52-57(d) and (e) provide that service may be made upon the Secretary of the State in actions against

4

*Connecticut partnerships and voluntary associations*, respectively. However, the Plaintiff has not alleged that the Defendant Trusts are partnerships or voluntary associations.

The Plaintiff further advised the court that "Pursuant to Rule 5(b)(2)(D) of the Federal Rules of Civil Procedure" that it "is unable to complete service by the means listed in Rule 5(b)(2)(A-C) or (E-F)," and the Defendant Trusts "ha[ve] no known address." It therefore left the Summons, Complaint and other service materials with the Clerk's Office, 141 Church Street, New Haven, Connecticut. *See Docket Entry No. 30, 39-42.*

However, the Plaintiff cannot rely on Rule 5 to effect service of process, because "Rule 5 applies only to appearing parties." *Moore's Federal Practice* § 5.03[1] (3d ed. 2018) ("The service provisions in Rule 5 apply only after a party has made an appearance in the proceeding."); § 5.03[4] ("Rule 5 does not apply to this category of claims [those against non-appearing parties] because the Rule 5 service provisions assume that the court has personal jurisdiction over the party and that the party is already aware of the proceedings and is keeping abreast of new developments."). "Rule 5 provides the means to serve a party, short of the time consuming and expensive means required by Rule 4, for all documents after the initial complaint." *Reid v. Dan Yant, Inc.*, 2018 WL 8014197. Rule 5(a)(1)(B), specifically articulates that "each of the following papers must be served on every party: . . . a pleading filed after the initial complaint."

Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant . . . ." Fed. R. Civ. P 4(m). Similarly, Rule 12(b)(5) provides for dismissal of a complaint for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). Therefore, as to the Defendant Trusts, the undersigned

respectfully moves that this motion be granted in regards to the allegations against them based upon lack of personal jurisdiction over the Defendant Trusts because of lack of service of process.

## B. THE PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

When determining "a Rule 12(b)(6) motion to dismiss for failure to state a claim, [the court accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). "To survive a 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, plausibly to give rise to an entitlement to relief." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). Although a complaint "does not need detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"To survive a motion to dismiss [pursuant to Fed. R. Civ. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The standard is one of "plausibility" and not "probability." *Twombly*, 550 U.S at 556. A complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and we "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly* at 555 (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to does not need detailed factual allegations, ..., a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do,..." *Id.* The Plaintiff has failed to satisfy the *Iqbal* and *Twombly* standards and therefore the Complaint must be dismissed with prejudice.

The Charter Oak Trust was a welfare benefit plan and therefore was an ERISA plan. The Supreme Court long ago decided that federal post-judgment proceedings may not be utilized to enforce ERISA-based liability against another person on successor liability or alter ego-type theories. In *Peacock v. Thomas*, 516 U.S. 349, 351 (1996), the Supreme Court considered whether a judgment under ERISA may be enforced in a subsequent federal proceeding against another person not otherwise liable for the judgment, based on an independent theory of liability. *Id.* It squarely held that claims of veil piercing, post-judgment fraudulent conveyance, and civil conspiracy may not be raised against another party in an ancillary judgment enforcement proceeding. *Id.* at 358. The Court concluded that the district court lacked subject matter and ancillary jurisdiction over the subsequent action seeking to enforce the ERISA judgment because, inter alia, it was "founded upon entirely new theories of liability." *Id.* at 354, 358; see *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC.*, 438 F.3d 298, 312 (3d Cir. 2006) ("Veil-piercing [in the ERISA context] does not make a party secondarily liable. Rather, it collapses corporate distinctions to make for joint primary liability."); see also *Romita v. Anchor Tank Lines, LLC*, No. 11 Civ. 9641 (DAB), 2013 WL 432903, at *3 (S.D.N.Y. Feb. 1, 2013)

("Although Plaintiffs' claim is one of successor liability, and not veil-piercing, the strictures of Peacock apply.").

Nor may an ERISA judgment be enforced in state court based on such theories. Generally, federal money judgments may be enforced in any state court. 28 U.S.C. § 1962; N.Y. CPLR § 5018(b) (duly filed federal judgment of "the same effect as a judgment entered in the supreme court within the county."). But ERISA's preemption of state law is broad: it "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a); see *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)("The deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive."). State enforcement proceedings imposing ERISA-based successor or alter ego liability on a third person or entity in its individual capacity would be inconsistent with ERISA preemption.

"[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (internal quotation marks omitted). "When the lower federal court lacks jurisdiction, we have jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit." Id. (internal quotation marks and alterations omitted). "We review the question of subject-matter jurisdiction de novo." *City of New York v. Mickalis Pawn Shop*, LLC, 645 F.3d 114, 126 (2d Cir.2011).

Where a new substantive theory is advanced to establish liability as to a new party, some independent ground is necessary to assume federal jurisdiction over the claim. *Epperson v.*

*Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir.2001) (recognizing need for independent jurisdictional hook where a claim "raise[s] an independent controversy with a new party in an effort to shift liability"); see also *Peacock*, 516 U.S. at 357. No such independent ground has been established here. See *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994) ("It is to be presumed that a cause lies outside [a federal court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction" (internal citations omitted)). The Plaintiff therefore has failed to state a claim upon which relief may be granted and as such the allegations against the Defendant Trusts should be dismissed.

## C. "CONSTRUCTIVE TRUST" IS NOT A CAUSE OF ACTION

Numerous Connecticut federal and state courts have dismissed complaints alleging constructive trust as a cause of action.  This is because a "constructive trust" is a *remedy,* not an independent claim for relief: "[c]onstructive trust is an equitable remedy which may be imposed in circumstances where unjust enrichment has occurred and certain other requirements are met." *Reed v. McCready*, 2014 WL 2854001, at *3, 7 (Conn. Super. May 16, 2014) (dismissing constructive trust pled as a cause of action: "a constructive trust is deemed to arise or be imposed as a result of actions which constitute unjust enrichment or fraud."); *Coan v. Dunne*, 2019 WL 1976146, at *5 (D. Conn. May 3, 2019) ("[a] constructive trust is a remedy, not an independent substantive cause of action.  *Carney v. Lopez*, 933 F. Supp. 2d 365, 384 (D. Conn. 2013) (dismissing claim for constructive trust and  converting  it  to  a  request  for  a remedy).  Constructive trusts are designed to prevent unjust enrichment, and '[a] claimant entitled to restitution from property may obtain restitution from any traceable product of that property,

without regard to subsequent changes of form.' *Town of New Hartford v. Conn. Res. Recovery Auth.*, 291 Conn. 433, 466 (2009).'"

Therefore, the Court should dismiss the Fourth Count as to the Defendant Trusts, because it fails to state any legally cognizable cause of action.

### D. PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT, FAILS TO STATE ANY ENTITLEMENT TO RELIEF

Assuming, *arguendo*, that the Court treats the Fourth Count (constructive trust) as a claim for unjust enrichment, the Complaint should still be denied because Plaintiff has failed to allege any facts that the Spencer life insurance proceeds (or other assets) were ever transferred to any of the Trusts, or that they received an unjust benefit. Moreover, Judge Swain has repeated the trail of money that came from the Charter Oak Trust to Grist Mill Capital, and from there to the various Carpenter-related entities many times, and has determined the Judgment Debtors years ago in 2012 and again in 2014. Furthermore, contrary to the Plaintiff's Complaint, the sole and primary beneficiary of the Spencer's policy was Grist Mill Capital. *See Spencer Beneficiary Designation Form attached as Exhibit Three and Judge Swain's Order Dismissing Plaintiff's Complaint attached as Exhibit One.*

To impose a constructive trust as a remedy for unjust enrichment, additional facts must be pled and proven. A constructive trust only arises "where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *United States v. $2,350,000.00 In Lieu of One Parcel of Prop. Located at 895 Lake Ave. Greenwich, Connecticut*, 718 F. Supp. 2d 215, 227 (D. Conn. 2010). Once a court determines that a constructive trust *could* be imposed, "the question then becomes whether this equitable remedy *ought* to be imposed." *Id.* (emphasis added). "The trial court may recognize the existence of the constructive trust and, nevertheless, decline to order the

conveyance or other disposition of the property in satisfaction of the debt." *Id.* "When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Id.*

"It is hornbook law before a constructive trust may be imposed, a claimant to a wrongdoer's property must trace his property into a product in the hands of the wrongdoer." *In re Handy & Harman Ref. Group*, 266 B.R. 24, 27 (Bankr. D. Conn. 2001); *United States v. Benitez*, 779 F.2d 135, 140 (2d Cir. 1985)). "The beneficiary of a constructive trust does not have an interest superior to the trustee's in every asset the trustee holds, but only in those assets held in constructive trust or traceable to such assets." *Id.* at 227–28 (*quoting United States v. Schwimmer*, 968 F.2d 1570, 1583 (2d Cir. 1992)). Thus, "an entity who wishes to have a constructive trust established on its behalf must be able to trace its funds to the property over which the trust will be established." *Id.*; *In re A.N. Frieda Diamonds, Inc.*, 2020 WL 2059907, at *19 (Bankr. S.D.N.Y. Apr. 29, 2020) (same; collecting cases).

Here, Plaintiff has not alleged any facts that the Trusts received any of the Spencer life insurance proceeds, and certainly has not satisfied the heightened standard for fraud pursuant to Rule 9(b). Plaintiff has not alleged that any of the Trusts improperly received any other property. Rather, the Fourth Count merely alleges that: "Between November 2, 2009 and November 12, 2009 Daniel Carpenter caused Judgment Debtor Grist Mill Holdings, LLC to make eleven transfers of the Spencer death benefits to the Charitable Trusts. Upon information and belief these eleven transfers combined for $1.76 million of the Spencer death benefits." Complaint at ¶ 128. The Complaint, however, *never* explains how transfers done in 2009 are somehow fraudulent conveyances anticipating Judge Swain's decision in 2014, nor does the Complaint satisfy the strict rules of Rule 9(b) showing the "who, what, where, when" of fraud

that is required to even allege the basic elements consistent with unjust enrichment or the requirements for a constructive trust or what the "assets" are. Thus, Plaintiff has not alleged facts consistent with the basic elements of unjust enrichment.

Moreover, because a constructive trust as a "remedy" is claimed, the amount of the remedy would be limited to amount of transfers of the Spencer life insurance proceeds *traceable* to the Trusts. *Baltas v. Frenis*, 2019 WL 1552915, at *6 (D. Conn. Apr. 10, 2019) (district court considering prejudgment remedy will "consider not only the validity of the plaintiff's claim but also the amount that is being sought."). Since they admit they have received $12 million from Christiana Bank, even if the $1.7 million was fraudulent conveyance, which it is not, there is no proof that the money actually came as a part of the Sash Spencer proceeds. But, even assuming *arguendo*, that they were from the Sash Spencer proceeds, the amount from Christiana Bank erases any claim they may have against any Trusts. See Complaint ¶164, recognizing $12 million paid by Christiana Bank, the Insurance Trustee of the Charter Oak Trust. Therefore, there is no possible claim that can be established against any the Defendant Trusts in this case.

### E. "LIABILITY FOR ATTORNEYS' FEES" IS NOT A COGNIZABLE CAUSE OF ACTION

"Liability for Attorneys' Fees" is not a legally cognizable cause of action in the state of Connecticut or anywhere else in the United States for that matter. Rather, it is a prayer for relief that, according to Plaintiff, an unnamed trust document (*see* Complaint ¶¶ 185-86) allegedly allows for recovery for attorneys' fees by a prevailing party. Therefore, it is entirely unclear what independent cause of action Plaintiff asserts in Count Two. The undersigned's research has revealed no independent cause of action for attorneys' fees. Therefore, the Trusts reserve the right to further move to dismiss if it has misconstrued Plaintiff's cause of action or case law to

support such a claim is provided by the Plaintiffs rather than these naked claims of this unnamed trust.

## F. THE COMPLAINT MUST BE DISMISSED FOR A LACK OF DIVERSITY JURISDICTION

Before it can do anything else, a federal court must determine that it has subject matter jurisdiction to hear a case. Federal courts are courts of limited jurisdiction, and it is incumbent upon the Court to determine if a federal question exists, and if the parties are actually diverse for the purposes of federal jurisdiction, as this case should have been brought in state court if at all. The federal courts have consistently held to the principle that once jurisdiction is challenged, the District Court has no authority to do anything but to take action on the motion to determine whether or not it has jurisdiction to proceed. As the Supreme Court held in *The State of Rhode Island v. The State of Massachusetts*, 37 U.S. 657 (1838), the Court is powerless to consider a claim over which it lacks subject-matter jurisdiction. Arguments about the parties' purported motives are irrelevant. *Id.* at 714. Once the question of jurisdiction is raised *"it must be considered and decided before the court can move one step further"* (emphasis added) *Id.* at 718. "Jurisdiction cannot be assumed by a district court nor conferred by agreement of parties, but it is incumbent upon [the Plaintiff] to allege in clear terms, the necessary facts showing jurisdiction *which must be proved by convincing evidence*." *Harris v. American Legion*, 162 F. Supp. 700 (1958) (emphasis added), see also *McNutt v. General Motors Acceptance*, 298 U.S. 178 (1936).

Subject matter jurisdiction can be challenged even after the entry of judgment. "The objection that a federal court lacks subject-matter jurisdiction, see FRCP Rule 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006). It has long been the case that "the jurisdiction of the court depends upon the state of things at the time of the

action brought." *Mollan v. Torrance*, 9 Wheat. 537, 539 (1824). This time-of-filing rule is hornbook law (quite literally according to Justice Scalia) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing— whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal. "Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment." See *Capron v. Van Noorden*, 6 U.S. 126,2 Cranch 126 (1804).

"Traditional trusts, establishing only fiduciary relationships, … are incapable of being haled into court except through their trustees. Thus, it is the trustees' citizenship that must determine diversity, not the citizenship of trust beneficiaries." *Loubier Irrevocable Trust v. Loubier, et al*, 858 F.3d 719, 731 (2017). The Supreme Court has adhered to the time-of-filing rule regardless of the costs it imposes. For example, in *Anderson v. Watt*, 138 U.S. 694 (1891), two executors of an estate, claiming to be New York citizens, had brought a diversity-based suit in federal court against defendants alleged to be Florida citizens. When it later developed that two of the defendants were New York citizens, the plaintiffs sought to save jurisdiction by revoking the letters testamentary for one executor and alleging that the remaining executor was in fact a British citizen. The Court rejected this attempted post-filing salvage operation, because at the time of filing the executors included a New Yorker. Id. at 708. It dismissed the case for want of jurisdiction, even though the case had been filed about 5 ½ years earlier, the trial court had entered a decree ordering land to be sold 4 years earlier, the sale had been made, exceptions had been filed and overruled, and the case had come to the Court on appeal from the order confirming the land sale. *Id*. at 698. Writing for the Court, Chief Justice Fuller adhered to the principle set forth in *Conolly v. Taylor*, 27 U.S. 556,2 Pet. 556, 565 (1829), that "jurisdiction

depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." "[J]urisdiction," he reasoned, "could no more be given ... by the amendment than if a citizen of Florida had sued another in that court and subsequently sought to give it jurisdiction by removing from the State." *Anderson* at 708.

As in *Anderson*, in this case, Sharon Siebert is clearly a resident of Florida as she owns a home and spends all of her time there. *See Sharon Seibert's Declaration sign in Florida with a Florida Notary attached as Exhibit Four.* Similarly, Mr. Carpenter was a resident of MDC Brooklyn on May 28th at the time of the filing, which is when residency and domicile are determined for the purposes of federal jurisdiction, as Plaintiff Donna Vassar was also a resident of New York at the time of filing. Mr. Carpenter has been a long-term resident of Florida, and will return there upon termination of his sentence of incarceration. Prior to his incarceration, he maintained a Florida driver's license, was registered to vote there, and has bank accounts and safety deposit boxes in Florida. For purposes of diversity jurisdiction, Mr. Carpenter is a resident of Florida as is Sharon Siebert. *See Sharon Seibert's Filing with Florida Secretary of State listing her address as Florida, attached as Exhibit 5.* Additionally, Mr. Carpenter is under the New York Residential Re-entry Management in Brooklyn as required by the Bureau of Prisons' regulations. *See CorrLinks email showing Carpenter as resident of MDC Brooklyn* and *BOP Locator showing Carpenter as a resident of New York RRM attached as Exhibit Six.*

## CONCLUSION

Because of the aforesaid arguments, this Court lacks personal jurisdiction over the Defendant Trusts and the Plaintiff has failed to state a claim for which relief may be granted, the Defendants move this Honorable Court to dismiss the allegations against them with prejudice.

Respectfully Submitted
THE DEFENDANTS,

By: _/s/ Grayson Colt Holmes_____
Grayson Colt Holmes
Federal Bar No.: ct30111
Ouellette, Deganis, Gallagher & Grippe LLC
143 Main Street
Cheshire, CT 06410
Phone: (203) 272-1157
Fax: (203) 250-1835
Email: gholmes@odglaw.com

## CERTIFICATION

I hereby certify that on this 3rd day of August, 2020, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

By: */s/ Grayson Colt Holmes*
       Grayson Colt Holmes
       Federal Bar No.: ct03111

# EXHIBIT

# ONE

**Judge Swain's Order Dismissing Plaintiff's March 23, 2020 Complaint**

The following transaction was entered on 4/1/2020 at 9:48 AM EDT and filed on 3/31/2020

**Case Name:**     Universitas Education, LLC v. Nova Group, Inc.

**Case Number:**     1:11-cv-01590-LTS-HBP

**Filer:**

**WARNING: CASE CLOSED on 06/07/2012**

**Document Number:** 661

**Docket Text:**

**ORDER: The Court has received and reviewed in their entirety Plaintiff's March 23, 2020, letter motions requesting entry of judgment against Moonstone Partners, LLC, Benistar Admin Services, Inc. ("BASI"), and Molly Carpenter, (Docket Entry Nos. 658, 659), as well as the March 30, 2020, letter from counsel for those entities opposing entry of judgment (Docket Entry No. 660). Plaintiff's letter motions request relief that is not enumerated in NYSD Local Civil Rule 7.1(d), which describes applications which may be brought by letter motion. Accordingly, the motions are DENIED without prejudice to formal motion practice in compliance with the relevant federal, local, and individual procedural rules of Court. Any such motion must address the legal basis, if any, for the Court's exercise of personal jurisdiction over the non-party entities named in the above-referenced letter motions, whether such a motion is the appropriate procedural mechanism by which the Court can enforce its Memorandum Order confirming the arbitration award in this case (Docket Entry No. 40) against non-parties to the underlying litigation, and whether such motion practice is consistent with the limitations of ancillary jurisdiction as described in Peacock v. Thomas, 516 U.S. 349 (1996), and the Court's order interpreting Peacock and denying Plaintiff's prior turnover motion in this case. See Docket Entry No. 545. Any such motion must also address the legal and factual basis for the requested judgment amount in light of any recoveries Plaintiff has already obtained. (Signed by Judge Laura Taylor Swain on 3/31/2020) (mro)**

# EXHIBIT TWO

**Declaration of Molly Carpenter**

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNIVERSITAS EDUCATION, LLC | ) | |
| | ) | |
| Plaintiff | ) | CIVIL ACTION NO. |
| | ) | 3:20-cv-00738-JAM |
| vs. | ) | |
| | ) | |
| BENISTAR, et al | ) | |
| | ) | AUGUST 2, 2020 |
| Defendants | ) | |

## DECLARATION OF MOLLY CARPENTER

I, MOLLY CARPENTER, make the following statements based on my personal knowledge of the facts contained herein. I am of sound mind and under no infirmity. I am over the age of eighteen years of age:

1. The Property located at 10 Tower Lane, Avon, Connecticut is a commercial business property. It is not a residential property.

2. I am familiar with the property and the commercial tenants that conduct business at 10 Tower Lane in Avon, Connecticut.

3. No one lives at 10 Tower Lane in Avon, Connecticut. There are no residential units or buildings on said property.

I declare under penalty of perjury that the foregoing is true and correct. (28 U.S.C. 1746).

Signed on this Second day of August 2020.

MOLLY CARPENTER

1

# EXHIBIT THREE

**Beneficiary Designation Form signed by Sash Spencer
naming Grist Mill Capital, LLC the Primary Beneficiary**

Apr 26 08 01:55p              212-319-6823      p.2

# LINCOLN # 7320809
# $20,000,000



CHARTER OAK TRUST

## ELECTION OF PARTICIPATION &
## BENEFICIARY DESIGNATION FORM

NAME OF EMPLOYER: HOLDINGS CAPITAL GROUP, INC.

NAME OF COVERED EMPLOYEE: SASH A. SPENCER      SSN: ▓▓▓▓▓

To: Administrator of the CHARTER OAK PLAN & TRUST

To participate in the Plan, place your initials in the space provided next to "A" below and insert the names of your beneficiaries. To make such beneficiary designation irrevocable, place your initials in the space next to "B" below and insert the names of your beneficiaries. Please do not forget to designate at least one beneficiary.

A.  _____     I wish to participate in the Plan and name the following persons or entities as the Beneficiaries of any death benefit payable under the Plan:

Name of Beneficiaries: _____

Contact Person: _____    Phone: _____

Address: _____

I understand that I may change this designation at any time by submitting a new Beneficiary Designation Form to the Plan Administrator, and that such new designation will become effective when accepted by the Plan Administrator.

B.   ✓     I wish to participate in the Plan and name the following persons or entities as the Irrevocable Beneficiaries of any death benefit payable under the Plan:

Name of Beneficiaries: UNIVERSITAS EDUCATION, LLC

Contact Person: SHARON SIEBERT    Phone: 212-826-0056

Address: 404 E. 55th STREET, SUITE 13A, NY NY

I hereby elect that the foregoing designation of my beneficiary or beneficiaries of any death benefit that becomes payable pursuant to the Plan is irrevocable and non-amendable, and I shall have no right whatsoever to change such beneficiary designation for any reason. (If you have chosen option B, your signature must be notarized.)

NOTE: I hereby designate Grist Mill Capital, LLC as primary beneficiary of any sums which remain unpaid pursuant to any other agreements I might have with Nova Group, Inc. and acknowledge that my beneficiaries as designated above will receive all death benefit proceeds in excess of the sums payable to Grist Mill Capital, LLC.

X _____
Signature of Employer's Authorized Person

SASH A. SPENCER, CEO
Name and Title of Authorized Person (Print or Type)

May 9th, 2008
Date of this Designation

X _____
Signature of Covered Employee

SASH A. SPENCER
Name of Employee (Print or Type)

The foregoing instrument was acknowledged before me this 9th day of May 2008

_____
Notary Public

Commission Expires: 10/31/2010

COPYRIGHT © 2007 NOVA GROUP, INC.
ALL RIGHTS RESERVED. REV. 02/27/07

BARBARA A. KNIFFEN
Notary Public, State of New York
No. 31-4826643
Qualified in New York County
Commission Expires 10/31 2010

# EXHIBIT
# FOUR

**Declaration Filed by Universitas, which was signed
by Sharon Siebert at her Florida residence and
notarized by a Florida Notary**

Case 3:14-cv-00125-RNC   Document 151-1   Filed 08/04/20   Page 32 of 41
Case 3:20-cv-00738-JAM   Document 15-1   Filed 08/03/20   Page 2 of 41

Case 1:15-cv-11848-DPW   Document 174   Filed 09/06/19   Page 1 of 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>Plaintiff,<br><br>v.<br><br>JACK E. ROBINSON, III a/k/a JACK E. ROBINSON,<br><br>Defendant. | Civil Action No.<br>1:15-CV-11848 (DPW) |

## AFFIDAVIT OF SHARON E. SIEBERT

SHARON E. SIEBERT, under penalty of perjury, declares and says as follows:

1.      My name is Sharon E. Siebert, and I am a founder and member of Universitas Education, LLC ("Universitas"). I have personal knowledge of the facts set forth herein.

2.      Universitas is a Delaware limited liability company, with its headquarters at 404 East 55th Street, Apartment 13A, New York, New York 10022.

3.      Universitas was previously the research and development arm of the now-defunct Destination Foundation Universitas ("Destination Universitas").

4.      Destination Universitas was a charitable foundation based in New York. Destination Universitas had its charitable designation administratively revoked because Universitas was unable to continue to fund it. Universitas's hardships were a direct result of the costly litigation efforts to enforce Universitas' judgment against the Charter Oak Trust and Nova Group.

5.      Universitas aims to develop and provide programs for leaders and educators around the world to support global philanthropic and humanitarian efforts.

Case 3:14-cv-00125-RNC   Document 151   Filed 12/04/20   Page 33 of 41
Case 3:20-cv-00738-JAM   Document 145   Filed 08/04/20   Page 33 of 41
Case 1:15-cv-11848-DPW   Document 174   Filed 09/06/19   Page 2 of 4

6.     Universitas is operated by myself and my colleague, Donna Vassar.

7.     Ms. Vassar and I are Universitas' only members.

8.     In 2007, Universitas had negotiated for, and had prepared a letter of intent for the purchase of land for the development of a sanctuary on 69.59 acres in Lake Las Vegas, Nevada, for global leaders to gather and recharge during multi-day retreats.

9.     Universitas had discussed the purchase of the Lake Las Vegas property, solicited and selected a design proposal, completed a strategic development plan, and was in the process of finalizing proposals.

10.     One contributor to the project was Mr. Sash Spencer. Mr. Spencer chaired a private investment firm and was a financial partner to Universitas and Destination Universitas. Mr. Spencer died unexpectedly in June 2008. Prior to his death, he named Universitas the sole irrevocable beneficiary of two life insurance policies worth $30,000,000.

11.     Universitas has still not obtained the life insurance proceeds that Mr. Spencer endowed it.

12.     I received and reviewed the correspondence from Jack E. Robinson, Wayne Bursey, and others sent on behalf of the Charter Oak Trust ("COT") and its affiliates. I discussed these communications with Universitas' various representatives, including its attorney when appropriate.

13.     I initially believed that COT's accurately conveyed the provisions of the COT Declaration of Trust and would abide by the provisions thereof. I believed that the COT Declaration of Trust as amended in January 2007 included a provision within Section 6.01 that allowed COT to retain twenty percent of the death benefits of a participant who dies while participating in COT. However, I did not believe that the provision applied to Universitas'

circumstances because Mr. Spencer enrolled in COT prior to this alleged amendment, and COT never notified myself or anybody else about this alleged change in the Trust document.

14.    Universitas also undertook the arbitration against COT and its affiliates in good faith. Universitas relied upon Mr. Bursey's affidavit and Mr. Robinson's declaration asserting that COT had the assets to satisfy a judgement against it. Had I known that the proceeds from Mr. Spencer's life insurance proceeds had already been disbursed and spent on things such as a vacation home for Daniel Carpenter, Universitas would have altered its litigation strategy and would likely have sought civil remedies against Carpenter and his affiliates sooner. Universitas likewise would have adopted a much different litigation strategy had I known that the money in dispute had been improperly conveyed and used for criminal purposes. Instead, the misrepresentations and continuing bad faith by Robinson (before his death), Carpenter, and the rest of their affiliates have forced us to engage in protracted litigation that eventually contributed to the dissolution of Destination Universitas.

15.    The arbitration awarded Universitas a judgment against COT and its trustee, Nova Group, Inc. for $26,525,535.98.[1] Universitas' received this award on January 24, 2011, and the award remains largely unsatisfied.

16.    Universitas' effort to enforce its judgement has caused Universitas to become involved in numerous cases across the country. Attached as **Exhibit A** is a list of cases wherein Universitas has made filings concerning its award.

17.    The cost of this litigation has been high. To date, Universitas been billed for legal fees in excess of $10,000,000.

---

[1] This award was broadened during the subsequent litigation to confirm and enforce the award. The court provided Universitas with a money judgment on August 7, 2014. The money judgment is for $30,181,880.30, to account for interest on the unpaid judgment. The judgment is also enforceable against Daniel Carpenter and some of his companies, in addition to the original judgment debtors.

Case 3:14-cv-00125-RNC   Document 151   Filed 12/04/20   Page 35 of 41
Case 3:20-cv-00738-JAM   Document 145   Filed 08/03/20   Page 35 of 41
Case 1:15-cv-11848-DPW   Document 174   Filed 09/06/19   Page 4 of 4

18.     The judgment debtors and their affiliates have been recalcitrant and obstructive. To date, Universitas has recovered only $4,703,621.64 of its $30,181,880.30 judgment.

19.     The judgment debtors' refusal to satisfy Universitas' judgment has caused Universitas hardship. Universitas has had difficulty paying the excessive legal fees accrued in trying to recover the proceeds from the Spencer policies, and this has led to disputes with former counsel regarding fees.

Dated: New York, New York   West Palm Beach, Fla.
September 6, 2019

Sharon E. Siebert

Sworn to me on this 10 day
of September, 2019

Notary Public

DARLENE A. BROWN
MY COMMISSION # GG 213385
EXPIRES: May 11, 2022
Bonded Thru Notary Public Underwriters

4

# EXHIBIT FIVE

**Florida Secretary of State showing Universitas
as a Florida Entity and Sharon Siebert as a
Florida Resident**



Department of State / Division of Corporations / Search Records / Search by Entity Name /

# Detail by Entity Name

Rejected Filing
UNIVERSITAS EDUCATION LLC

Filing Information

**Document Number**
W18000045747

**Filed Date**          05/15/2018

**Expire at Usual Time**    Y

**Penalty Fee**          00.00

**Associated Document
Number**

**Document Type**        SHARON E
**Filed By**             SIEBERT

4224 2ND WAY

WEST PALM BEACH, FL 33407

Document Images

**No images are available for this filing.**

## Detail by Registered Agent Name

Foreign Limited Liability Company
UNIVERSITAS EDUCATION LLC

Filing Information

| | |
|---|---|
| **Document Number** | M18000005812 |
| **FEI/EIN Number** | ▬▬▬▬ |
| **Date Filed** | 06/20/2018 |
| **State** | DE |
| **Status** | INACTIVE |
| **Last Event** | REVOKED FOR |

ANNUAL REPORT

| | |
|---|---|
| **Event Date Filed** | 09/27/2019 |
| **Event Effective Date** | NONE |

Principal Address

404 EAST 55TH ST 13A
NEW YORK, NY 10022

Mailing Address

404 EAST 55TH ST 13A
NEW YORK, NY 10022

Registered Agent Name & Address

SIEBERT, SHARON E
4224 42ND WAY
WEST PALMN BEACH, FL 33407

Authorized Person(s) Detail

**Name & Address**

Title MPT

VASSAR, DONNA
404 EAST 55TH ST 13A
NEW YORK, NY 10022

Title MVS

SIEBERT, SHARON
4224 42ND WAY
WEST PALM BEACH, FL 33407

Annual Reports

**No Annual Reports Filed**

Document Images

06/20/2018 — Foreign Limited    |  View image in PDF format  |

# EXHIBIT

# SIX

**CorrLinks email showing Carpenter as resident of MDC Brooklyn and BOP Locator showing Carpenter as a resident of New York RRM**

**From:** "CorrLinks" <info@corrlinks.com>
**Subject: Inmate: CARPENTER, DANIEL**
**Date:** June 4, 2020 at 4:49:48 AM EDT
**To:**

Inmate 90792038 - CARPENTER, DANIEL no longer has access to the Trust Fund Limited Inmate Computer System; therefore, he/she may not send or receive messages. El preso 90792038 - CARPENTER, DANIEL ya no tiene acceso al sistema de computadora limitada de presos del fondo fiduciario; por lo tanto, el/ella no puede enviar o recibir mensajes.

Search bop.gov

Home   About Us   Inmates   Locations   Careers   Business   Resources   Contact Us

# Find an inmate.

Locate the whereabouts of a federal inmate incarcerated from 1982 to the present. Due to the First Step Act, sentences are being reviewed and recalculated to address pending Good Conduct Time changes. As a result, an inmate's release date may not be up-to-date. Website visitors should continue to check back periodically to see if any changes have occurred.



Find By Number | **Find By Name**

| First | Middle | Last | Race | Age | Sex |
|-------|--------|------|------|-----|-----|
| daniel | | carpenter | | | |

**1** Result for search **daniel carpenter**, Num: **90792-038**          Clear Form          Search

## DANIEL CARPENTER

Register Number: 90792-038

Age:     66
Race:    White
Sex:     Male

Located at: New York RRM

Release Date: 05/08/2021

**Related Links**

Facility Information
Call or email
Send mail/package
Send money
Visit
Voice a concern

About the inmate locator & record availability



Federal Bureau of Prisons   Protecting Society. Changing Lives.

| About Us | Inmates | Locations | Careers | Business | Resources | Resources For ... |
|----------|---------|-----------|---------|----------|-----------|-------------------|
| About Our Agency | Find an Inmate | List of our Facilities | Life at the BOP | Acquisitions | Policy & Forms | Victims & Witnesses |
| About Our Facilities | First Step Act | Map of our Locations | Explore Opportunities | Solicitations & Awards | News Stories | Employees |
| Historical Information | Communications | Search for a Facility | Current Openings | Reentry Contracting | Press Releases | Federal Executions |
| Statistics | Custody & Care | | Application Process | | Publications | Former Inmates |
| | Visiting | | Our Hiring Process | | Research & Reports | Media Reps |
| | Voice a Concern | | | | | |

Contact Us | FOIA | No FEAR Act | Privacy Policy | Information Quality | Website Feedback
USA.gov | Justice.gov | Open Government