**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNIVERSITAS EDUCATION, LLC<br><br>Petitioner,<br><br>v.<br><br>NOVA GROUP, INC., ET AL.<br><br>Respondent. | CASE NO. 14-mc-00125-RNC<br><br><br><br>JANUARY 4, 2021 |

**PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF INHERENT POWER SANCTIONS AGAINST DANIEL CARPENTER**

Petitioner, Universitas Education, LLC ("Universitas"), respectfully submits this Memorandum of Law, along with the attached exhibits, in support of its Motion for Sanctions against Daniel Carpenter, the principal of Carpenter Financial group, Inc. ("CFG").[1]

## I. INTRODUCTION

CFG is controlled by Daniel Carpenter, and CFG's Motion to Vacate is part of Mr. Carpenter's relentless efforts to obstruct Universitas' attempts to collect its judgment. Other entities under Mr. Carpenter's control have been repeatedly sanctioned for similar motions, which have been characterized as "entirely meritless," "plainly frivolous," and "in bad faith and with a motive to delay, harass, or needlessly increase the cost of litigation." CFG's Motion to Vacate reiterates many of the same arguments previously deemed sanctionable, and thus these sanctions have clearly failed to deter Mr. Carpenter from such misconduct. Nor were these arguments limited to CFG's Motion to Vacate – Mr. Carpenter simultaneously filed similar motions containing the same meritless arguments in numerous courts.

[1] Universitas intends to file a separate motion for sanctions against counsel for CFG. Universitas will file this motion upon satisfaction of the "safe harbor period" within Fed. R. Civ. P. 11.

This Court imposed conditions upon Mr. Carpenter's supervised release that should have prevented Mr. Carpenter from continuing to file vexatious motions on behalf of entities under his control. Mr. Carpenter did not hesitate to violate the terms of his supervised release. Nor have Mr. Carpenter's efforts to prevent Universitas from collecting its judgment been limited to frivolous motions; he has also resorted to, *inter alia*, obstruction of justice, fabrication of evidence, witness intimidation, contempt of court, and continued threats against Universitas' counsel.

Universitas received its award nine years ago. It is time for the Court to put an end to Mr. Carpenter's bad faith delay tactics and abuse of the courts. Other courts have tried to do so by enjoining the entities under Mr. Carpenter's control responsible for the frivolous filings. Mr. Carpenter simply dissolved those entities and continues to file similar frivolous motions through other entities under his control. Mr. Carpenter has a long history of abusing the corporate form in this manner and will almost certainly circumvent future injunctions in a similar manner. The Court should thus use its inherent power to sanction Mr. Carpenter, and end his bad faith attacks on Universitas' judgment. Specifically, the Court should enter an anti-filing injunction prohibiting Mr. Carpenter, along with the entities included in the Appendix, from filing any new actions against Universitas, Universitas' principals, Universitas' counsel, and/or Universitas' agents without leave of this Court to do so.[2] This injunction should encompass an appeal for any denial of CFG's Motion to Vacate.

## II. FACTUAL BACKGROUND

Nova Group, Inc. ("Nova") was the trustee, sponsor, and fiduciary of the Charter Oak Trust Welfare Benefit Plan ("COT"). *See Universitas Educ., LLC v. Nova Group, Inc.*, 784 F.3d 99, 100

[2] The entities listed in the Appendix are entities known to be under Mr. Carpenter's control, or entities that Universitas has good cause to believe are under Mr. Carpenter's control. Universitas reserves the right to supplement this list with additional entities should it prove necessary to do so.

(2d Cir. 2015). Universitas obtained an arbitration award against Nova in 2011. *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2012 U.S. Dist. LEXIS 79295 (S.D.N.Y. June 5, 2012). Since that time Universitas "has been diligently trying to collect its judgment." *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 37988, at *13 (S.D.N.Y. Mar. 23, 2016). Universitas' collection efforts have been thwarted by Mr. Carpenter's "stubborn and baseless efforts to impede Universitas' collection of the judgment." *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2016 U.S. Dist. LEXIS 72268, at *16 (S.D.N.Y. Mar. 31, 2016). Not only has Universitas been largely unable to collect its judgment, it has been embroiled in litigation with Mr. Carpenter and/or entities under his control since that time – the entirety of this litigation was "necessitated by the relentless efforts of [Mr. Carpenter] to prevent Universitas from realizing the benefit of its arbitration victory." *See Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11CV1590-LTS-HBP, 2014 U.S. Dist. LEXIS 143667, at *6 (S.D.N.Y. Oct. 8, 2014).

a. **Procedural History**[3]

Mr. Carpenter initially filed to vacate the arbitration award in Connecticut – the action was transferred to the Southern District of New York because it was an "improper anticipatory filing." ((Order [#22]) *Nova Group, Inc. v. Universitas Education, LLC*, No. 3:11-cv-342-AWT (D. Conn. Nov. 12, 2011).) Mr. Carpenter then moved to vacate the award in the Southern District of New

[3] This synopsis concerns both Nova and Mr. Carpenter. Nova was a shell company controlled by Mr. Carpenter, and the court found Mr. Carpenter in contempt of court for Nova's failure to comply with a court order because "Mr. Carpenter is responsible for the conduct of Nova Group." *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 99957, at *27-*29 (S.D.N.Y. July 11, 2013). This Court subsequently found that Mr. Carpenter controlled the Charter Oak Trust, for which Nova was the sole trustee, sponsor and fiduciary. *See United States v. Carpenter*, 190 F. Supp. 3d 260, 298-99 (D. Conn. 2016). Thus, Universitas attributes Nova's behavior to Mr. Carpenter and uses these terms interchangeably when discussing the underlying litigation.

York – the court denied Mr. Carpenter's motion and confirmed the arbitration award. *See Universitas Educ.*, 2012 U.S. Dist. LEXIS 79295. Mr. Carpenter then moved for reconsideration of the motion to vacate and argued, *inter alia*, that the award in Universitas' favor must be vacated because the Spencer policies "were fraudulent." (*See* (Mem. [#46]]) *Universitas Educ., LLC v. Nova Group, Inc.*, No. 1:11-cv-1590-LTS-HBP (June 21, 2012 S.D.N.Y.).) The court denied Mr. Carpenter's motions and imposed sanctions for filing this motion. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 142901, at *39-*40 (S.D.N.Y. May 21, 2013).

Universitas then filed two turnover motions seeking, respectively, proceeds owed in relation to an insurance policy taken out on a property that Mr. Carpenter purchased with funds stolen from Universitas and the stolen funds themselves.[4] The court found that "Mr. Carpenter caused Nova, the Charter Oak Trust, and other affiliated entities, directly or indirectly, to transfer the Insurance Proceeds, to which [Universitas] is entitled, to and through entities that he controlled, either directly or indirectly, all for the personal benefit of Mr. Carpenter and his affiliates without consideration." *See Universitas Educ., LLC v. Nova Grp., Inc.*, Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP), 2014 U.S. Dist. LEXIS 109077, at *16 (S.D.N.Y. Aug. 7, 2014). The court thus entered judgment against certain recipients of the Spencer proceeds in the amount fraudulently conveyed to each entity, and entered judgment against Mr. Carpenter for the full amount of the stolen proceeds. *See id.* Nova has also been found liable for the entirety of Universitas' attorneys' fees throughout all post-judgment collection proceedings. *See Universitas*

[4] This Court subsequently determined that Mr. Carpenter's purchase of this property constituted illegal monetary transactions, and convicted Mr. Carpenter on thirteen counts of illegal monetary transactions. *See Carpenter*, 190 F. Supp. 3d 260. This Court determined that Mr. Carpenter's use of these proceeds for purposes other than the purchase of this property constituted money laundering, and convicted Mr. Carpenter on ten counts of money laundering and conspiracy to commit money laundering. *See id.*

*Educ.*, 2014 U.S. Dist. LEXIS 143667. The court entered judgment for Universitas' attorneys' fees on numerous occasions, and to date Mr. Carpenter has refused to pay the court-ordered attorneys' fees.

b. **Mr. Carpenter's Conduct Throughout the Proceedings**

After Sash Spencer died, Mr. Carpenter and his associates unilaterally altered the COT Trust Document to create a false basis for retaining a portion of the Spencer insurance proceeds. *See Carpenter*, 190 F. Supp. 3d at 293-94. Mr. Carpenter then submitted the falsified Trust Document to the arbitrator as evidence in the arbitration with Universitas. (*See* (Tr. of Bench Trial Day 14 [ECF #500]) *United States v. Carpenter*, Case No. 3:13-cr-226-RNC (D. Conn. Mar. 9, 2016)). The arbitrator thus improperly awarded a portion of the life insurance proceeds to a Carpenter-controlled entity, thereby depriving Universitas of millions of dollars that rightfully belong to Universitas. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 165803, at *6-*7 (S.D.N.Y. Nov. 20, 2013).

i. Mr. Carpenter's Litigation Strategy

Mr. Carpenter has employed a two-pronged litigation strategy throughout the litigation with Universitas: (i) file meritless and frivolous motions in order to delay Universitas' collection efforts, and (ii) obstruct discovery to prevent Universitas from locating the stolen proceeds and/or other assets capable of satisfying Universitas' judgment. The entire litigation was "marked by Nova Group's diversionary and dilatory motion and discovery practices, all of which are aimed at frustrating any efforts by Universitas to enforce the judgment." *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 1720, at *3 (S.D.N.Y. Jan. 4, 2013).

1. Promoting Delay Through Frivolous Motion Practice

The court characterized Mr. Carpenter's litigation strategy as a strategy "motivated not by

legal merit, but rather by dilatory purposes." *See Universitas Educ., LLC v. Nova Grp., Inc.,* 2013 U.S. Dist. LEXIS 142901 at *36. The court also described Mr. Carpenter's litigation strategy as a "strategy of promoting delay through the filing of meritless and frivolous motions." *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 142902, at *35 (S.D.N.Y. May 21, 2013). As explained by the court:

> Throughout the post-judgment proceedings, Nova's actions appeared to be 'primarily aimed at avoiding or otherwise delaying Universitas' enforcement of the judgment' .... The frivolousness of the legal arguments, the 'suspect timing' of the motion, and the inconsistent legal positions Nova took during the course of the litigation led to the inference that the motion was motivated by strategic delay.... The evidence establishes that the conduct was willful.... Nova's sanctionable conduct was part of a pattern of activity in the post-judgment proceedings that was aimed at frustrating Universitas' efforts to enforce the judgment.... Nova advanced two arguments in its challenge to federal question jurisdiction that were 'objectively unreasonable and stood no chance of success'.... The persistence and baselessness of Nova's abusive tactics suggest that Nova intended to injure Universitas' rights to collect the judgment.... [A] substantial sanction of $25,000 is necessary to impress upon Nova and others that the judicial system is not to be used as a vehicle for the delay and obstruction of a party's right to collect a court-ordered judgment.... Nova's misconduct was willful, persistent and succeeded in delaying Universitas' ability to collect its judgment.

*Universitas Educ.*, 2016 U.S. Dist. LEXIS 72268 at *7-*18.

2. Obstructionist Discovery Practices and Contempt of Court

Mr. Carpenter also obstructed discovery in order to prevent Universitas from locating assets capable of satisfying its judgment.[5] *See Universitas Educ.*, 2016 U.S. Dist. LEXIS 37988 at *13 ("… Carpenter's obstructionist conduct in discovery has already frustrated and delayed Universitas' collection of its judgment."); *Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *34 ("[T]he efforts of Nova Group and individuals and entities associated with it to conceal the

---

[5] Mr. Carpenter also sought to misdirect Universitas' discovery efforts by filing a brief that purposefully misrepresented the identity of the Charter Oak Trust insurance trustee. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *25.

whereabouts of the insurance proceeds in issue here is extremely troubling."). Mr. Carpenter also sought to prevent third parties from complying with discovery subpoenas. *See Universitas Educ., LLC v. Nova Group, Inc.*, Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP), 2012 U.S. Dist. LEXIS 166554 (S.D.N.Y. Nov. 21, 2012). Ultimately, Mr. Carpenter was found in contempt of court for his refusal to comply with court-ordered discovery. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 99957.

ii. Sanctions

The court imposed sanctions in response to eleven different motions filed on Mr. Carpenter's behalf. *See Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 142479 (S.D.N.Y. Sep. 30, 2013); *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 U.S. Dist. LEXIS 142481 (S.D.N.Y. Sep. 30, 2013). These sanctions were intended "to deter … the filing of baseless motions in an attempt to avoid the consequences of an unfavorable court finding." *See Universitas Educ., LLC*, 2013 U.S. Dist. LEXIS 142902 at *32. Among the sanctions imposed in response to this motion was an injunctive sanction prohibiting Nova from filing any motions without prior permission from the court. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142481 at *18.

The sanctionable motions included nine separate motions to quash and a motion to reconsider Mr. Carpenter's motion to vacate the arbitration award – the court collectively characterized these motions as "entirely meritless and in bad faith" and "unfortunate examples of the unreasonable and vexatious multiplication of proceedings that Section 1927 seeks to deter." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *39-*40.[6] Mr. Carpenter's motion to dismiss for lack of subject matter jurisdiction was also found sanctionable pursuant to Fed. R. Civ.

[6] The Court also said that the motion for reconsideration was an "attempt to relitigate the same issues by invoking a different procedural vehicle." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *32.

P. 11(b)1-(b)(3).[7] *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142902 at *24-*25. This motion argued that there was not complete diversity between the parties because of the citizenship of a non-party that Mr. Carpenter simply added to the case caption. *See Universitas Educ.*, 2016 U.S. Dist. LEXIS 72268 (reaffirming sanction for, *inter alia*, altering case caption in filings to "'create a false factual basis' for Nova's baseless challenger to diversity jurisdiction."). The court found this motion to be "plainly frivolous" and filed "in bad faith and with a motive to delay, harass, or needlessly increase the cost of litigation." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142481 at *10; *Universitas Educ.*, 2013 U.S. Dist. LEXIS 142902 at *24-*25.

iii. <u>Continued Fraud Upon Universitas</u>

Mr. Carpenter continued to defraud Universitas throughout the litigation by transferring proceeds away from judgment debtors in order to frustrate Universitas' collection attempts. *See Universitas Educ., LLC v. Nova Group, Inc.*, Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP), 2014 U.S. Dist. LEXIS 3983, at *25 (S.D.N.Y. Jan. 3, 2014) ("Mr. Carpenter's entities have continued to seek to transfer assets from the judgment-debtor … despite the Judgment and the service of restraining notices."). Among these fraudulent transfers was a transfer of property purchased with the stolen Spencer proceeds to Mr. Carpenter's daughter made <u>two days</u> after the court first determined that Mr. Carpenter fraudulently defalcated the entirety of the Spencer insurance proceeds. (Ex. 1.)

iv. <u>Obstruction of Justice</u>

Mr. Carpenter testified in regard to the whereabouts of the Spencer insurance proceeds during the first turnover proceeding – the court characterized Mr. Carpenter's testimony as "an

[7] By imposing sanctions pursuant to Fed. R. Civ. P. 11(b)(1) the court found that the motion was made "for an[] improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." *See* FED. R. CIV. P. 11(b)(1).

apparent attempt to assert fabricated defenses to the paper trail that Universitas had uncovered." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803 at *8-*9 & n. 1. Mr. Carpenter then testified about these same matters again, and the court again found his testimony "incredible." *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at *12-*13. This Court subsequently determined that Mr. Carpenter's testimony constituted obstruction of justice and imposed a heightened sentence upon Mr. Carpenter for obstruction of justice in a related civil proceeding. (*See* (Tr. of Sentencing Proceeding [ECF #422]) *United States v. Carpenter*, Case No. 3:13-cr-226-RNC (D. Conn. Dec. 3, 2018)).

v. Threats

Mr. Carpenter threatened nonparties against complying with discovery subpoenas – the court *sua sponte* suggested that Mr. Carpenter's actions constituted witness intimidation and obstruction of justice. *See Universitas Educ.*, 2012 U.S. Dist. LEXIS 166554. Mr. Carpenter also sought to prevent Universitas from filing the turnover motions by threatening Universitas' counsel with bar complaints and legal action in response to any such filing. (Ex. 2.) More recently, Mr. Carpenter sought to have Universitas' counsel disbarred for, *inter alia*, reiterating factual findings made by this Court. (Ex. 7.) Mr. Carpenter subsequently reiterated his desire for Universitas' counsel to be disbarred and sought to have Universitas' counsel investigated for mail and wire fraud.[8] (Ex. 8.)

[8] Mr. Carpenter contends that he is innocent of all wrongdoing, and thus any attempt to collect Universitas' judgment is so meritless that the only explanation for any such attempt is a criminal conspiracy whereby Universitas' attorneys defraud Universitas by collecting fees in exchange for futile filings. (Ex. 8.)

c. **Mr. Carpenter's Violations of the Conditions Imposed Upon His Supervised Release.**

This Court imposed special conditions upon Mr. Carpenter's supervised release during his sentencing, including a prohibition on engaging in for-profit business and/or any involvement in finances for a non-profit entity. (*See* (Tr. of Sentencing Proceeding [ECF #422]) *United States v. Carpenter*, Case No. 3:13-cr-226-RNC (D. Conn. Dec. 3, 2018)). Mr. Carpenter immediately violated both of these conditions of his supervised release. Mr. Carpenter is the sole trustee for five charitable trusts involved in a post-judgment collection suit whereby Universitas is seeking to recover on an alter ego theory of liability, and Mr. Carpenter has been directing litigation on behalf of these trusts in that action. Mr. Carpenter is the sole trustee of these trusts, and thus is necessarily exercising control over the trusts' finances. Likewise, Mr. Carpenter is engaged in for-profit business by exercising control over CFG in this proceeding, and thereby directing CFG to allocate money for legal representation while simultaneously representing that CFG is insolvent and unable to satisfy Universitas' judgment.

d. **Similar Filings in Other Proceedings**

Mr. Carpenter filed a motion to dismiss in the alter ego collection suit, on behalf of the charitable trusts under his control, arguing, *inter alia*, that Universitas is foreclosed from future collection of its judgment because of the WSFS settlement, and that Universitas was not the beneficiary of the Spencer policies. (Universitas Mem., Ex. 1 [ECF #15-1].) Similarly, Mr. Carpenter filed a motion to vacate the underlying judgment arguing, *inter alia*, that Universitas was not the beneficiary of the Spencer policies, the judgment is void under Fed. R. Civ. P. 58 because it was a "Clerk's Order" and/or was not personally signed by Hon. Judge Swain, and Sash Spencer committed fraud upon COT. (Universitas Mem., Ex. 2 [ECF #15-2].) Mr. Carpenter did

not serve Universitas with process of his motion to vacate the underlying judgment – the Certificate of Service stating that Mr. Carpenter mailed a copy of the motion to Universitas' counsel is untrue. (Universitas Mem., Ex. 2 [ECF #15-2] at 4.) Nor did CFG serve process upon Universitas with its Motion to Vacate the Charging Order. Universitas' counsel of record in this proceeding ceased to represent Universitas years ago, and Universitas' current counsel had not previously entered an appearance in this long-dormant proceeding, and did not receive notice from the electronic filing system. Mr. Carpenter knew that Universitas' current counsel was not entered in this proceeding and would not receive notification from the e-filing system. (Ex. 8 at 1 ("…claims made by new counsel for Universitas….").)

e. **Mr. Carpenter's Abuse of the Corporate Form**

Mr. Carpenter controls hundreds of companies. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at *7-*8. These companies are used to serve Mr. Carpenter's personal interests. *See id.* (explaining that Mr. Carpenter used his companies to fraudulently defalcate money belonging to Universitas for his personal benefit); *see also id.* (explaining that Mr. Carpenter uses his companies to shield assets from his personal creditors); *see also Cahaly v. Benistar Prop. Exch. Tr. Co.*, 68 Mass. App. Ct. 668, 677 n. 15 (2007) (explaining that Mr. Carpenter used company money to fund "his personal penchant for risky options trading on the stock market").

Mr. Carpenter's companies are not legitimate business enterprises. *See Carpenter*, 190 F. Supp. 3d at 274 ("[T]he formal corporate structure of the various Benistar Entities had little meaning for the people involved…. The evidence also shows that corporate entities were created and discarded at Mr. Carpenter's direction when it suited his purposes.). Mr. Carpenter uses the companies under his control interchangeably in order to further his personal interest. (*See* (Order [#218]) *Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-005-HE (W.D. Okla. Oct. 20,

2020) at 38-62 (explaining that three Carpenter-controlled entities were used interchangeably, in part "to hide assets from Universitas").)[9]

Many of these companies are Mr. Carpenter's alter egos. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803 at *11-*12 (explaining that Mr. Carpenter testified that "GM Holdings is my alter ego for collecting commissions.").) The Commonwealth of Massachusetts pierced the corporate veil of five companies under Mr. Carpenter's control. *See Cahaly*, 68 Mass. App. Ct. at 672 n. 6. The court then pierced the corporate veil of another two companies Mr. Carpenter used to shield money from judgment creditors. *See Iantosca v. Benistar Admin. Servs.*, 567 F. App'x 1 (1st Cir. 2014) (affirming jury's finding that additional companies were alter egos of Mr. Carpenter). The Western District of Oklahoma then pierced the corporate vail of another three entities under Mr. Carpenter's control. (*See* (Order [#218]) *Universitas Educ., LLC v. Avon Capital, LLC*, No. 14-fj-005-HE (W.D. Okla. Oct. 20, 2020).) Similarly, this Court found that Mr. Carpenter controlled a series of companies operated as part of a criminal conspiracy to defraud life insurance carriers, as well as a criminal conspiracy to launder money rightfully belonging to Universitas. *See Carpenter*, 190 F. Supp. 3d 260. The money stolen from Universitas was conveyed through entities under Mr. Carpenter's control and was ultimately used for Mr. Carpenter's personal benefit. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803; *Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077.

f. **Carpenter's Control of CFG**

Mr. Carpenter is the Chairman and Secretary of CFG. (Ex. 10.) Mr. Carpenter controls CFG. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at *9. Mr. Carpenter used this control to facilitate his money laundering operation – the $11.14 million judgment against CFG

[9] A copy of this magistrate's report is attached to this Memorandum as Exhibit 12.

corresponds to the amount of Spencer insurance proceeds it fraudulently received. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077; *Carpenter*, 190 F. Supp. 3d 260. Mr. Carpenter uses CFG to pay his personal expenses. (Ex. 5.) Mr. Carpenter also listed his personal residence as CFG's address in this proceeding. (Ex. 6.)

g. **Other Attempts to Frustrate Creditors**

Mr. Carpenter has actively obstructed other creditors' collection efforts. In an unrelated dispute, Mr. Carpenter filed numerous post-judgment actions seeking to stay collection efforts without notifying his creditors and/or serving them with process. (Ex. 3 ¶¶ 6-9.) Mr. Carpenter then made material misrepresentations to these courts in order to achieve his desired outcome. (Ex. 3 ¶¶ 6-9.) When these actions ultimately failed to prevent enforcement of the judgment, Mr. Carpenter simply transferred the property to his sister for no consideration. (Ex. 4.) Mr. Carpenter's sister declared bankruptcy immediately thereafter. (Ex. 3 ¶ 10.)

## III. LEGAL STANDARD

a. **Sanctions Pursuant to Inherent Power of Court**

The federal courts possess a "well-acknowledged" inherent power to levy sanctions in response to abusive litigation practices. *See Roadway Express v. Piper*, 447 U.S. 752, 765 (1980). Thus, courts can sanction a party under its inherent power in order to deter abuse of the judicial process. *See Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020); *see also Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) ("Thus a federal court — any federal court — may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (internal citations omitted). This power stems from the courts' "need to be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *See Yukos Capital*, 977 F.3d at 235. Courts can use their inherent

power to fashion "an appropriate sanction for conduct which abuses the judicial process." *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)). This includes injunctive relief barring a litigant from filing new actions to further litigate a matter. *See In re Martin-Trigona*, 737 F.2d 1254, 1261-62 (2d Cir. 1984) (providing that courts may issue injunctive sanctions pursuant to their inherent power).

i. Scope of Inherent Power

The inherent power can sanction any form of litigation abuse. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991). Thus, the courts' inherent power is not limited to filings – courts can use their inherent power to sanction **any** conduct that "unreasonably and vexatiously" multiplies litigation. *See Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 n. 2 (2d Cir. 2010); *see also Sussman by & Through Guilden v. Bank of Isr.*, 56 F.3d 450, 459-60 (2d Cir. 1995) ("While Rule 11 extends only to papers filed with the court, the court's inherent power is broader and would permit the court to impose sanctions on the basis of related bad-faith conduct….") (internal citations omitted). Courts can also consider conduct in other proceedings when contemplating sanctions under the inherent power. *See Chambers*, 501 U.S. at 51 (explaining that inherent power should be used to avoid "satellite litigation" concerning discrete acts of sanctionable conduct).

ii. Standard

The imposition of sanctions pursuant to a court's inherent authority is left to the discretion of the court. *See Yukos Capital*, 977 F.3d at 235. However, the Court must specifically find that a party acted in bad faith in order to impose sanctions pursuant to its inherent power. *See Roadway Express*, 447 U.S. at 768.

iii. Test

Inherent power sanctions require clear evidence that the conduct at issue is: (i) entirely without color, and (ii) motivated by improper purposes. *See Wolters Kluwer Fin. Servs. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009). Conduct is "entirely without color" when it lacks any legal or factual basis. *See Sierra Club v. United States Army Corps. of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) (internal citations omitted). Conduct is motivated by an improper purpose when it was made for reasons of harassment or delay or for other improper purposes. *See id.*

iv. Sanctioning Non-Parties

Courts can use their inherent power to sanction nonparties to a proceeding. *See e.g.*, *New York Credit & Fin. Mgmt. Grp. v. Parson Ctr. Pharmacy, Inc.*, 432 F. App'x 25 (2d Cir. 2011) (sanctioning majority shareholder and chief executive who managed litigation and represented the party-defendant "at every step") (internal citations omitted); *In re Rainbow Magazine*, Inc., 77 F.3d 278, 278 (9th Cir. 1996) (upholding sanctions levied under the court's inherent power against corporate debtor's principal who orchestrated the bad faith filing of bankruptcy petition); *Helmac Prods. Corp. v. Roth Corp.*, 150 F.R.D. 563, 567 (E.D. Mich. 1993) (sanctioning owner and principal of debtor who was "as much involved in the litigation as any party would be"). A nonparty can be sanctioned pursuant to the Court's inherent power if they: (i) have a substantial interest in the litigation, and (ii) play a substantial role in the litigation.[10] *See In re Parikh*, 508 B.R. 572, 601 (Bankr. E.D.N.Y. 2014).

[10] This test is intended to limit the scope of the Court's inherent power to sanction nonparties that are not subject to a court order to the "real parties in interest." *See Helmac Prods.*, 150 F.R.D. at 568.

1. Substantial Interest in the Litigation

A nonparty has a substantial interest in a litigation when they own the corporate defendant. *See Helmac Prods. Corp. v. Roth Corp.*, 150 F.R.D. 563, 567 (E.D. Mich. 1993). A nonparty also has a substantial interest when they are employed by the corporate defendant. *Bartos v. Pennsylvania*, CIV. 1:08-CV-0366, 2010 U.S. Dist. LEXIS 43937, at *17-*20 (M.D. Pa. May 5, 2010).

2. Substantial Role in the Litigation

A nonparty plays a substantial role in the litigation when the party's conduct can be attributable to the nonparty at issue:

> [A]s the majority shareholder, chief executive, and only person affiliated with RxUSA to have a substantive role in this litigation, Drucker is RxUSA. He managed the litigation on RxUSA's behalf and represented RxUSA at every step. RxUSA acted only through him and RxUSA does not dispute that Drucker's conduct is attributable to RxUSA. Accordingly, though Drucker did not violate a specific Court order, the Court has the inherent power to sanction him for his litigation misconduct.

*Amerisource Corp. v. Rx USA Int'l Inc.*, No. 02-CV-2514 (JMA), 2010 U.S. Dist. LEXIS 67108, at *15-*16 (E.D.N.Y. July 6, 2010). Likewise, a nonparty plays a substantial role when they are actively involved in the litigation. *See Helmac Prods.*, 150 F.R.D. at 567.

b. **Injunctive Sanctions**

Courts can sanction improper conduct with injunctive sanctions that enjoin future filings. *See Safir v. United States Lines, Inc.*, 792 F.2d 19, 23-24 (2d Cir. 1986) ("That the district court possessed the authority to enjoin [litigant] from further vexatious litigation is beyond peradventure.") (internal citations omitted); *see also In re Martin-Trigona*, 737 F.2d at 1262 ("A district court not only may but should protect its ability to carry out its constitutional functions against the threat of onerous, multiplicitous, and baseless litigation."); *Feathers v. Chevron U.S.A.*,

*Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) ("There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation."). These injunctions can enjoin filing new actions in courts outside the district of the court imposing the sanctions, and can even include state courts. *See In re Martin-Trigona*, 737 F.2d at 1263 ("protection of our jurisdiction requires that we shield federal litigants, their counsel, court personnel, their families and professional associates from [litigant's] vexatious litigation in all courts, state or federal."); *see also Doctor's Assocs., LLC v. Tripathi*, 794 F. App'x 91, 93-94 (2d Cir. 2019) (explaining that filing injunctions can extend to state courts).

i. Standard

Injunctive sanctions should be imposed when a litigant would otherwise continue to abuse the judicial system and harass other parties. *See Safir*, 792 F.2d at 24; *see also In re Martin-Trigona*, 9 F.3d 226, 230 (2d Cir. 1993) ("Litigants … who abuse the judicial system forfeit their right to the full panoply of procedures available in the conduct of normal litigation."). Injunctive sanctions do not require satisfaction of the traditional standards for injunctive relief. *See Polur v. Raffe*, 912 F.2d 52, 57 (2d Cir. 1990) ("The traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant."); *see also Jones v. City of Buffalo*, 96-CV-0739E(F), 1998 U.S. Dist. LEXIS 6070, at *14-*15 (W.D.N.Y. Apr. 22, 1998) ("The traditional standards for injunctive relief, *i.e.* irreparable injury and inadequate remedy at law, do not apply to the issuance of an injunction against a vexatious litigant. A history of litigation entailing 'vexation, harassment and needless expense to other parties' and 'an unnecessary burden on the courts and their supporting personnel' is enough.") (internal citations omitted).

ii. Relevant Factors

Courts should consider the following factors when determining whether to impose injunctive sanctions: (i) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (ii) the litigant's motive in pursuing the litigation; (iii) whether the litigant is represented by counsel; (iv) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (v) whether other sanctions would be adequate to protect the courts and other parties. *See Safir*, 792 F.2d at 24.

iii. Types of Injunctive Sanctions.

Courts can impose a "leave of court" requirement upon a party's future filings. *See In re Martin-Trigona*, 9 F.3d at 228-30. Courts can similarly enjoin a party's ability to file appeals. *See McWilliams v. N.Y.C. Bd. of Educ.*, Nos. 99-7877, 99-7880, 2000 U.S. App. LEXIS 5205, at *6-*7 (2d Cir. Mar. 27, 2000) (explaining that imposing "leave of court" requirement upon filing appeals is an appropriate sanction for duplicative and vexatious litigation).

## IV. **ARGUMENTS**

Vexatious litigants cannot avoid sanctions by hiding behind the corporate veil. *See Helmac Prods.*, 150 F.R.D. at 568. The Supreme Court has approved of inherent power sanctions for litigants with behavior similar to that of Mr. Carpenter's. *See Chambers*, 501 U.S. 32. The fact that Mr. Carpenter's misconduct primarily occurred in other courts is not relevant. *See In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1139 (2d Cir. 1987) (explaining that "[t]he filing of … a new action does not erase a litigant's past abuse of the judicial system"). The Court should use its inherent power to sanction Mr. Carpenter and enjoin him, and the entities identified in the Appendix, from filing any new actions concerning this dispute without leave of this Court. *See In*

*re Neroni*, 639 F. App'x 9, 10 (2d Cir. 2015) ("A district court may, in its discretion, impose a filing injunction if confronted with "extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation . . . or a failure to comply with sanctions imposed for such conduct.") (internal citations omitted).

a. **Mr. Carpenter is Subject to Inherent Power Sanctions**

Mr. Carpenter is the "real party in interest" in this proceeding, and thus is subject to the Court's inherent power. *See Helmac Prods.*, 150 F.R.D. at 568.

i. <u>Substantial Interest</u>

Mr. Carpenter works for CFG, (Ex. 10,) and thus has a substantial interest in this litigation. *See Bartos*, 2010 U.S. Dist. LEXIS 43937, at *17-*20 (providing that nonparty also has a substantial interest when they are employed by the corporate defendant). Moreover, Mr. Carpenter uses CFG to pay his personal expenses, (Ex. 5,) and this financial reliance further provides Mr. Carpenter with a substantial interest in this litigation. *See Helmac Prods.*, 150 F.R.D. at 567 (providing that nonparty has a substantial interest in a litigation when they own the corporate defendant); *Bartos*, 2010 U.S. Dist. LEXIS 43937, at *17-*20 (providing that nonparty has a substantial interest in a litigation when they are employed by the corporate defendant).

ii. <u>Substantial Role</u>

Mr. Carpenter controls CFG. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077 at *9; *see also Carpenter*, 190 F. Supp. 3d at 286 n. 41 ("In a memorandum sent to various Benistar employees, [Mr. Carpenter] wrote: 'When everyone needs money they come calling on Benistar, which has to call on TPG or GMC or BPA, which in turn has to call on Carpenter Financial Group, which in turn has to call on me.'"). Mr. Carpenter's control over CFG dictates that he has a substantial role in this proceeding. *See Parson Ctr. Pharmacy*, 432 F. App'x 25 (sanctioning

majority shareholder and chief executive who managed litigation and represented the party-defendant "at every step") (internal citations omitted); *In re Rainbow Magazine*, Inc., 77 F.3d at 278 (upholding sanctions levied under the court's inherent power against corporate debtor's principal who orchestrated the bad faith filing of the bankruptcy petition); *Amerisource Corp.*, 2010 U.S. Dist. LEXIS 67108 at *15-*16 (sanctioning the majority shareholder, chief executive, and only person affiliated with corporate defendant to have a substantive role in this litigation).

b. **Mr. Carpenter Should be Sanctioned Pursuant to the Court's Inherent Power**

Mr. Carpenter's conduct clearly warrants inherent power sanctions, and the Court should accordingly sanction him. *See Chambers*, 501 U.S. at 41 (approving inherent power sanctions where litigant "attempted, by … tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance.").

i. Bad Faith

Mr. Carpenter has already filed numerous similar motions "in bad faith and with a motive to delay, harass, or needlessly increase the cost of litigation." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142481 at *10; *Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *39-*40. Mr. Carpenter's bad faith can also be inferred from the fact that his conduct occurred in the wake of arbitration. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *34 (explaining that "sanctions are peculiarly appropriate in the context of a challenge to an arbitration award which appears to be a largely dilatory effort.") (internal citations omitted).

ii. Mr. Carpenter's Attempt the Vacate the Charging Order was Entirely Without Color.

Mr. Carpenter moved to vacate the Charging Order by reiterating arguments that have been rejected by other courts and/or are previously under consideration by other courts. CFG's motion to vacate lacked any legal or factual basis, and thus justifies the exercise of the Court's inherent

power. *See Sierra Club*, 776 F.2d at 390 (explaining that conduct is "entirely without color" when it lacks any legal or factual basis.).

1. CFG's Motion to Vacate Lacked a Factual Basis.

The majority of CFG's "factual" assertions are both incorrect and barred by collateral estoppel. *See Burgos v. Hopkins*, 14 F.3d 787, 789-90 (2d Cir. 1994) (explaining that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue ….") (internal citations omitted). CFG's claim that Mr. Carpenter did not alter the COT Trust Document in the wake of Mr. Spencer's death is without a factual basis. *See Carpenter*, 190 F. Supp. 3d at 293-94 ("[T]he Declaration of Trust was altered by [Mr. Carpenter] in the wake of Mr. Spencer's death for the specific purpose of enabling COT to keep twenty percent of the total death benefit of $30 million."). CFG's claim that Universitas was not the beneficiary of the Spencer insurance policies is likewise false. *See Universitas Educ.*, 784 F.3d at 100 ("Spencer named Universitas as the sole, irrevocable beneficiary of the proceeds from the policies as Plan benefits"); *Carpenter*, 190 F. Supp. 3d at 293 ("The designated beneficiary of Mr. Spencer's two policies was Universitas Education, LLC."). CFG's claim that the judgment is a "Clerk's Order" is also without basis as the judgment is clearly labelled a "judgment."[11] (Holmes Decl., Ex. 1 [ECF #11-3].).

2. CFG's Motion to Vacate Lacked a Legal Basis.

Likewise, many of CFG's legal arguments are subject to res judicata and therefore meritless. *See Burgos*, 14 F.3d at 789-90 (explaining that res judicata "precludes the parties or their privies from relitigating issues that were or could have been raised in [a prior] action.") (internal

[11] This argument is an attempt to vacate the judgment based on an outdated version of Fed. R. Civ. P. 58 that required judgments to be labelled as "judgments" in order to be effective. *See Cooper v. Town of E. Hampton*, 83 F.3d 31, 34 (2d Cir. 1996).

citations omitted). CFG's argument that the ERISA statute of limitations rendered Universitas' claims untimely is barred by res judicata because Universitas' claims were not brought under ERISA. *See Universitas Educ*, 2012 U.S. Dist. LEXIS 79295 at *6-*7 ("[Nova] next argues that the arbitrator manifestly disregarded the law by permitting Petitioner to assert state law claims in violation of the preemption provision of the Employee Retirement Income Security Act ("ERISA"). This argument, too, is meritless."). CFG's service of process argument relied entirely upon caselaw from a different state. (CFG Mem. [ECF #11-1] at 8-11.). CFG's Motion to Vacate lacked a single meritorious argument, and thus was without a legal basis.

iii. <u>CFG's Motion to Vacate was Motivated by an Improper Purpose.</u>

This is Mr. Carpenter's fifth attempt to vacate the award in Universitas' favor. Mr. Carpenter previously sought to vacate the award, *inter alia*, because of "new evidence" demonstrating that Mr. Spencer committed fraud upon COT – the court deemed this motion as "entirely meritless and in bad faith" and consequently imposed sanctions. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *39-*40. Mr. Carpenter now seeks to vacate the Charging Order because of new evidence that Mr. Spencer committed fraud upon COT. This argument is so frivolous that it renders CFG's motion to vacate a transparent manifestation of Mr. Carpenter's litigation strategy of "promoting delay through the filing of meritless and frivolous motions." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142902 at *35. CFG's Motion to Vacate was thus motivated by an improper purpose. *See Sierra Club*, 776 F.2d at 390 (explaining that conduct is motivated by an improper purpose when it was made for reasons of harassment or delay or for other improper purposes).

c. **Injunctive Sanctions are Necessary to Protect Universitas and the Courts from Future Abuse and Harassment from Mr. Carpenter.**

Mr. Carpenter will continue to abuse the judicial system in the absence of an anti-filing injunction. *See In re NatTel, LLC*, Nos. 06-50421, 07-5037, 2012 Bankr. LEXIS 1640, at *3 (Bankr. D. Conn. Apr. 16, 2012) (referring to Mr. Carpenter's "litigious history"); *see also Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714-15 (2d Cir. 2019) (explaining that re-assertion of arguments rejected by other courts demonstrates a likelihood that litigant will "engage in further harassing, duplicative, and vexatious litigation ...."). Likewise, Mr. Carpenter's threats of retributive litigation are cause for concern that Mr. Carpenter will continue to use the courts to harass Universitas and/or its counsel. (Exs. 2, 7-8;) *Carpenter v. Israel*, Case No. 95-cv-2703 (DAB) (JCF), 2000 U.S. Dist. LEXIS 13846, at *21 (Sep. 22, 2000 S.D.N.Y.) ("Mr. Carpenter's conduct toward the plaintiffs and others has been characterized by threats of retribution whenever someone takes a position that he perceives as contrary to his interests."). This Court should thus impose injunctive sanctions upon Mr. Carpenter. *See Safir*, 792 F.2d at 24-25 (explaining that injunctive sanctions are warranted when a litigant is likely to continue to abuse the judicial process and harass other parties); *see also In re Hartford Textile Corp.*, 681 F.2d 895, 897 (2d Cir. 1982) (providing that courts are empowered to impose injunctive sanctions in order to end "vexation, harassment and needless expense."); *Sassower v. Abrams*, No. 91-8063, 1992 U.S. App. LEXIS 38245, at *3 (3d Cir. Feb. 12, 1992) (explaining that injunctive sanctions are warranted "in the interests of repose, finality of judgments, protection of defendants from unwanted harassment, and concern for maintaining order in the court's dockets" when a litigant "continually 'raises claims identical or similar to those that have already been adjudicated.'").

i. Mr. Carpenter's Litigation History Indicates that he Will Continue to Abuse the Judiciary.

The Court may impose injunctive relief to prevent a litigant from filing pleadings, motions, and/or appeals when that litigant has a "demonstrated history of frivolous and vexatious litigation." *See Malcolm v. Bd. of Educ. Of Honeoye Falls-Lima Central Sch. Dist.*, 506 F. App'x 65, 69 (2d Cir. 2012). As explained *infra*, Mr. Carpenter fulfills this criterion and injunctive sanctions are necessary to protect Universitas and/or the courts from Mr. Carpenter's future misconduct.

1. Mr. Carpenter has a History of Litigating in a Grossly Abusive Manner.

Courts have imposed injunctive sanctions upon parties with a history of litigating "in a grossly abusive manner that reflects a complete disregard for the judicial system, the judges and other court personnel who work on his lawsuits, his adversaries and their counsel … [and his] conduct has compelled this Court to devote a grossly disproportionate amount of its resources to his frivolous [filings]." *See Jones*, 1998 U.S. Dist. LEXIS 6070 at *16-*17 (citing *Procup v. Strickland*, 792 F.2d 1069, 1074 (11th Cir. 1986) ("the court has a responsibility to prevent single litigants from unnecessarily encroaching on the judicial machinery needed by others")). The Second Circuit Court of Appeals acknowledged that Mr. Carpenter's abusive litigation practices require courts to impose sanctions: "there is no disagreement that a sanction aimed at deterring Nova's persistent and abusive litigation conduct is appropriate and necessary." *See Universitas Educ.*, 784 F.3d at 104.

The entirety of this litigation has been "marked by Nova Group's diversionary and dilatory motion and discovery practices, all of which are aimed at frustrating any efforts by Universitas to enforce the judgment." *Universitas Educ.*, 2013 U.S. Dist. LEXIS 1720 at *3. This delay was the inevitable result of Mr. Carpenter's litigation strategy of wasting judicial resources in order to

address his "meritless and frivolous motions" that are "motivated not by legal merit, but rather by dilatory purposes." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *36; *Universitas Educ.*, 2013 U.S. Dist. LEXIS 142902 at *35. The court lamented that Mr. Carpenter continues to use bad faith litigation tactics in an attempt to convert the judiciary into "a vehicle for the delay and obstruction of a party's right to collect a court-ordered judgment." *See Universitas Educ.*, 2016 U.S. Dist. LEXIS 72268 at *17.

2. Mr. Carpenter has Demonstrated a Disrespect for the Judiciary.

Mr. Carpenter has consistently displayed a disregard for the judiciary. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 3983 at *13 ("The evidence received by this Court concerning the actions of Mr. Carpenter and his affiliates demonstrates an absence of respect … for the orders of this Court."); *see also Israel v. Carpenter*, 2003 U.S. Dist. LEXIS 11356, at *8-*9 (S.D.N.Y. July 7, 2003) ("[Mr. Carpenter's] conduct … raises serious concerns regarding his ability to follow a directive of this Court…. I ordered that Daniel Carpenter attend and testify at the hearing …. Despite my Order, Mr. Carpenter did not attend …."). Mr. Carpenter's "absence of respect" for the courts further suggests that the Court should use its inherent power to enjoin Mr. Carpenter and prevent further abuse of the judiciary. *See Sachs v. Matano*, No. CV 15-6049 (JFB) (AKT), 2016 U.S. Dist. LEXIS 93353, at *30 (E.D.N.Y. July 15, 2016) (considering a litigant's "utter lack of respect for his opponents and the entire court system" when contemplating inherent power sanctions); *see also Johnson v. EEOC Charlotte Dist. Office*, No. 3:15-cv-00148-RJC-DSC, 2016 U.S. Dist. LEXIS 83059, at *12-*13 (W.D.N.C. June 27, 2016) (same); *Tompkins v. Mitchell*, No. 1:10cv186, 2011 U.S. Dist. LEXIS 84365, at *6-*7 (W.D.N.C. Aug. 1, 2011) (imposing sanctions partly because of litigation history "which reflects a lack of respect for the judicial process"). Mr. Carpenter's lack of respect for the courts has manifested, *inter alia*, through his fabrication of

evidence, contempt of court, and obstruction of justice. *See Carrington v. Graden*, 2020 U.S. Dist. LEXIS 166531, at *15 (S.D.N.Y. Sep. 11, 2020) (providing that use of fabricated evidence indicates that litigant is likely to further abuse the judicial process).

Mr. Carpenter's disregard for this Court is further demonstrated by his gross indifference to the terms of his supervised release imposed by this Court. Upon his release from prison, Mr. Carpenter immediately violated the terms of his supervised release in order to exercise control over numerous charitable trusts and CFG. Moreover, Mr. Carpenter violated the terms of his supervised release so that he could continue to abuse the courts and delay Universitas' collection efforts. Mr. Carpenter's indifference for this Court's authority further indicates that inherent power sanctions are warranted. *See Perkinson v. Gilbert/Robinson, Inc.*, 821 F.2d 686, 691 (D.C. App. 1987) (holding that severe sanctions were justified "[i]n light of defendants' callous disregard of court orders and the Federal Rules.").

3. Mr. Carpenter has a History of Vexatious and Frivolous Motion Practice.

Courts have imposed injunctive sanctions in response to a litigant filing "numerous repetitive pleadings, motions, briefs and other submissions containing frivolous legal arguments, flagrant misstatements of fact, and scurrilous allegations." *See Sassower*, 1992 U.S. App. LEXIS 38245 at *2; *see also In re Hartford Textile Corp.*, 681 F.2d 895 (imposing injunctive sanctions when litigant continuously seeks to re-litigate same issues); *Polur*, 912 F.2d at 57 (same). Mr. Carpenter was previously sanctioned for motions attempting "to relitigate the same issues by invoking a different procedural vehicle." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *32. These motions were not only redundant, they were "so lacking in merit that the only reasonable inference is that they were filed for dilatory purposes" and were characterized as "unfortunate examples of the unreasonable and vexatious multiplication of proceedings

that Section 1927 seeks to deter." *See id.* at *31-*32. These motions were filed in the wake of Mr. Carpenter's long running practice of filing frivolous motions. *See Israel v. Carpenter*, 95 Civ. 2703 (DAB) (JCF), 2001 U.S. Dist. LEXIS 15571 (S.D.N.Y. Oct. 1, 2001) ("This motion is entirely frivolous. It is devoted primarily to challenges to the determination of liability, a determination that has already been affirmed by the Second Circuit.").

Many of the arguments within the previously sanctioned motions are regurgitated in CFG's Motion to Vacate, such as its argument that Universitas is not entitled to the Spencer insurance proceeds because Mr. Spencer committed fraud upon COT and/or the argument that ERISA is applicable to Universitas' claims. *See Universitas Educ.*, 2012 U.S. Dist. LEXIS 79295 at *6-*7. These arguments are barred by res judicata, and thus are frivolous. *See Baker v. Supreme Court for N.Y.*, 2013 U.S. Dist. LEXIS 12788, at *4-*5 (E.D.N.Y. Jan. 29, 2013).

Mr. Carpenter was also previously sanctioned for predicating arguments upon "a false factual basis." *See Universitas Educ.*, 2016 U.S. Dist. LEXIS 72268; *see also Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *25 ("[The] claim that the insurance trustee of Charter Oak Trust was M&T Bank … appears to be similarly calculated to mislead. M&T Bank is not the insurance trustee …."). CFG's Motion to Vacate contains similar misrepresentations, such as CFG's claim that the judgment is labelled as a "Clerk's Order." Other statements in CFG's Motion to Vacate, such as the assertion that Mr. Carpenter did not fabricate the COT Trust Document after Mr. Spencer's death and that Grist Mill Capital, LLC was the beneficiary of the Spencer insurance policies, are not only wrong, they are barred by collateral estoppel. *See Costello v. IBM*, 2006 U.S. Dist. LEXIS 57390, at *15-*16 (S.D.N.Y. Aug. 16, 2006) (explaining that courts impose sanctions "based on bad faith where [litigants] knew or 'should have known' that their claims were barred by collateral estoppel.").

4. Mr. Carpenter has a History of Using the Courts to Harass Universitas.

Mr. Carpenter's history of harassment suggests that he will continue to improperly use the courts to harass Universitas and its affiliates. *See Vasile v. Dean Witter Reynolds, Inc.*, 99-7297, 2000 U.S. App. LEXIS 2237, at *4-*5 (2d Cir. Feb. 14, 2000) ("In cases of a vexatious litigant … courts may protect … individuals from further harassment by means of an injunction."). Mr. Carpenter has referred to Universitas' female principals in a derogatory manner throughout this litigation, calling them "clueless and defenseless ladies," (Ex. 8 at 2,) "two floozies," (Ex. 8 at 5,) and a "mistress" that operates a "veritable 'pleasure palace.'" (Ex. 11 at 6;) *see also Pigford v. Veneman*, 215 F.R.D. 2 (D.D.C. 2003) (explaining that derogatory language is sanctionable). Mr. Carpenter has also consistently derided their charitable organization as a "bogus 'charity.'" (Ex. 7 at 3; Ex. 11 at 7;) *see also Johnson v. EEOC Charlotte Dist. Office*, No. 3:15-cv-148-RJC-DSC, 2016 U.S. Dist. LEXIS 12810, at *22 (W.D.N.C. Feb. 3, 2016) (explaining that "personal attacks against those involved in this litigation … are improper and sanctionable.") Mr. Carpenter also accused Universitas of extortion. (Ex. 7 at 2;) *see also In re RedF Mktg., LLC*, Nos. 12-32462, 17-03063, 2019 Bankr. LEXIS 3311, at *40-*41 (Bankr. W.D.N.C. Oct. 21, 2019) (finding unfounded accusation of extortion to be sanctionable and evidence that filing was made for improper purpose).

Mr. Carpenter has also repeatedly threatened to have Universitas' counsel disbarred. (Exs. 2, 7-8.) Mr. Carpenter further accused Universitas' counsel of mail and wire fraud and criminal conspiracy. (Ex. 8;) *see also Coats v. Pierre*, 890 F.2d 728, 734 (5th Cir. 1989) (explaining that "abusive language toward opposing counsel … is [a] form of harassment prohibited by Rule 11."). Mr. Carpenter also made scurrilous allegations against Hon. Judge Swain. (Ex. 9.) Mr. Carpenter's harassment and threats are merely a continuation of his long running practice of threatening and harassing other litigants. *See Carpenter v. Israel*, 2000 U.S. Dist. LEXIS 13846 at *21 ("Mr.

Carpenter's conduct toward the plaintiffs and others has been characterized by threats of retribution whenever someone takes a position that he perceives as contrary to his interests.").

ii. Mr. Carpenter Lacks a Good Faith Motive for Filing CFG's Motion to Vacate.

Mr. Carpenter previously moved to vacate the award by arguing that Mr. Spencer committed fraud upon COT – the court found this motion "entirely meritless and in bad faith." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142901 at *39-*40. Mr. Carpenter simply reiterates this same "entirely meritless" and bad faith argument in CFG's motion to vacate. *See Eliahu*, 919 F.3d at 714-15 (providing that re-assertion of previously rejected arguments evinces lack of good faith motive for making arguments); *see also O'Malley v. New York City Transit Auth.*, 896 F.2d 704, 709 (2d Cir. 1990) ("[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad faith and further supports the imposition of [sanctions]."). Moreover, Mr. Carpenter simultaneously filed this same meritless argument in multiple courts. (Universitas Mem., Ex. 2 [ECF #15-2];) *see also On Time Aviation, Inc. v. Bombardier Capital Inc.*, 570 F. Supp. 2d 328, 332 (D. Conn. 2008) ("[A] court may infer improper purpose where multiplicative filings are coupled with 'objectively unreasonable statements.'") (quoting *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2d Cir. 2003)); *Universitas Educ.*, 2016 U.S. Dist. LEXIS 72268 at *15-16 ("The persistence and baselessness of Nova's abusive tactics suggest that Nova intended to injure Universitas' rights to collect the judgment….Nova's conduct was intended to injure because the 'sanctionable conduct at issue here [was] symptomatic of Nova Group's stubborn and baseless efforts to impede Universitas' collection of the judgment.'") (internal citations omitted); *Safir*, 792 F.2d at 25 ("In light of the patently meritless nature of these motions, they can be viewed only as attempts … to harass the defendants."); *Neshewat v. Salem*, 365 F. Supp. 2d 508, 528 (S.D.N.Y.

2005) (sanctions warranted where the defendant was "intent on litigating the same issues over and over in the hopes of obtaining a more favorable result.").

CFG's factual misrepresentations, such as its claim that Universitas was not the beneficiary of the Spencer insurance policies, likewise demonstrate bad faith. *See Thomas v. Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (explaining that "recklessly or intentionally misrepresenting facts constitutes … bad faith ….") (internal citations omitted); *see also Costello*, 2006 U.S. Dist. LEXIS 57390 at *15-*16 (explaining that courts impose sanctions "based on bad faith where [litigants] knew or 'should have known' that their claims were barred by collateral estoppel."). Mr. Carpenter's bad faith is further demonstrated by his protracted history of similar bad faith filings. *See In re Men's Sportswear, Inc.*, 834 F.2d at 1139 (explaining that "[t]he filing of … a new action does not erase a litigant's past abuse of the judicial system").

iii. Mr. Carpenter is Represented by Counsel.

CFG is represented by counsel in this proceeding. This weighs in favor of imposing an anti-filing injunction upon Mr. Carpenter. *See Eliahu*, 919 F.3d at 715.

iv. Mr. Carpenter Has Caused Needless Expense to Universitas and Unnecessarily Burdened the Courts.

Mr. Carpenter has unequivocally caused needless expense to Universitas and unnecessarily burdened the courts. *See Universitas Educ.*, 2016 U.S. Dist. LEXIS 72268 at *16-*17 (lamenting that "Nova's frivolous motion has, no doubt, increased Universitas' legal fees, delayed Universitas' collection of the judgment and wasted scarce judicial resources…. [and] caused Judge Swain to waste time addressing a motion that never should have been made."); *see also Universitas Educ.*, 2016 U.S. Dist. LEXIS 37988 at *16 ("… Carpenter vigorously opposed Universitas' discovery efforts to aid in execution of the judgment, requiring repeated judicial intervention and wasting scarce judicial resources."). The harm to Universitas is significant – the

court likened Mr. Carpenter's litigation tactics to a "protracted and uncompensable war of attrition" designed to "erode the value of the award …." *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 143667 at *6. This harm has been magnified by Mr. Carpenter's refusal to pay Universitas' attorneys' fees as ordered by the courts. *See id.* CFG's Motion to Vacate only serves to exacerbate the needless cost to Universitas and unnecessarily burden on the courts. *See Johnson v. EEOC Charlotte Dist. Office*, 2016 U.S. Dist. LEXIS 83059 at *13 (explaining that "duplicative filings and [redundant] motions … place a substantial burden on the Court's limited judicial resources and on defendants who must respond.") (internal citations omitted).

v. Other Sanctions Would Not Protect Universitas and/or the Court from Mr. Carpenter.

The court previously sanctioned Mr. Carpenter in order to "deter … the filing of baseless motions in an attempt to avoid the consequences of an unfavorable court finding." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142902 at *32. These sanctions failed to serve their purpose – Mr. Carpenter continues to file the same frivolous arguments through different motions in numerous courts. Traditional sanctions have proven incapable of deterring Mr. Carpenter from abusing the legal system, and thus the Court should impose "severe" sanctions upon Mr. Carpenter. *See Polur*, 912 F.2d at 57.

Universitas' concerns are not limited to harassment. Universitas is also concerned that Mr. Carpenter will file new actions to attack the judgment – specifically that Mr. Carpenter will file for *ex parte* relief and make material misrepresentations to the court. Universitas' concern is based upon Mr. Carpenter's history of engaging in this exact behavior. (Ex. 3 ¶¶ 6-10.) This concern is heightened by the fact that Mr. Carpenter moved to vacate both the Charging Order and the underlying judgment without notifying and/or serving process upon Universitas. More so, Mr.

Carpenter's motion to vacate the underlying judgment expressly misrepresents this fact by falsely claiming that he did serve process upon Universitas. (Universitas Mem., Ex. 2 [ECF #15-2] at 4.)

The court previously required Nova to seek leave of court prior to filing any motions. *See Universitas Educ., LLC v. Nova Grp., Inc.*, Case No. 11-civ-1590 (LTS)(HBP), 2013 U.S. Dist. LEXIS 142481, at *18 (S.D.N.Y. Sep. 30, 2013). This sanction was intended to "deter[] … meritless collateral attack … [upon] a validly entered judgment." *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 142481 at *12. The anti-filing injunction failed to serve its purpose – Mr. Carpenter circumvented the injunction by ceasing to file motions on behalf of Nova and reiterating the same sanctionable arguments through motions filed on his own behalf. (Universitas Mem., Ex. 2 [ECF #15-2].) Moreover, Mr. Carpenter has made these same arguments on behalf of CFG and various charitable trusts under his control. (CFG Mem. [ECF #11-1]; Universitas Mem., Ex.1 [ECF #15-1].) Nor was Mr. Carpenter deterred by the terms of his supervised release, which expressly prohibited him from exercising control over these entities.

Enjoining Mr. Carpenter narrowly is not sufficient given the hundreds of companies under his control and his long history of abusing the corporate form. To be effective, any anti-filing injunction must be broad enough in scope to prevent similar circumvention through manipulation of the corporate form. *See Goodyear Tire*, 137 S. Ct. at 1186 (providing that courts can fashion "appropriate sanctions" for given circumstances); *see also Neshewat*, 365 F. Supp.2d at 528 (explaining that sanctions "must be tailored to the particular facts and circumstances of the specific case[.]"). Any other relief will fail to protect Universitas and/or the courts from further harassment and expense, and thus defeat the purpose of any sanctions.

## V. CONCLUSION

For the aforementioned reasons, Universitas respectfully requests that the Court enjoin Mr. Carpenter, along with the identified entities, from filing any new action against Universitas, its principals, and/or its agents, without prior leave of this Court, as well as any additional relief this Court deem just and equitable.

PETITIONER UNIVERSITAS EDUCATION, LLC,

By: /s/ Michael G. Caldwell /
Ilan Markus, ct 26345
Michael G. Caldwell, ct 26561
Barclay Damon, LLP
545 Long Wharf Drive
New Haven, CT 06511
Ph. (203) 672-2665
Fax (203) 654-3271
mcaldwell@barclaydamon.com

**CERTIFICATION OF SERVICE**

I hereby certify that on January 4, 2021 a copy of foregoing motion was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ Michael G. Caldwell
Michael G. Caldwell, ct26561