UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------
| UNIVERSITAS EDUCATION, LLC, | : | |
| Plaintiff, | : | Case No. 3:14-mc-00125-RNC |
| | : | |
| -against | : | |
| | : | |
| NOVA GROUP, INC., et al., | : | August 18, 2022 |
| Defendant. | : | |
------------------------------------------------------

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE AND/OR RELEASE CFG FROM CHARGING ORDER OF OCTOBER 27, 2015

Pursuant to Federal Rules of Civil Procedure Rule 60(b)(5), Petitioner and alleged Judgment Debtor Carpenter Financial Group, Inc. (hereinafter "CFG") respectfully submits this memorandum in support of its Motion to Release CFG from and/or Vacate the $11,400,000 Charging Order dated October 27, 2015 because through payments, along with the settlements from various other Judgment Debtors and Third Parties, more than the full amount of the Charging Order has been paid, and that through the Second Circuit's "One Satisfaction Rule" any claims against Petitioner CFG have now been satisfied.

### PRELIMINARY STATEMENT

On October 27, 2015, this Court entered a charging order "pursuant to C.G.S. 34-171, to charge the membership interest of the Judgment Debtor, Carpenter Financial Group ("CFG"), in Grist Mill Partners, LLC, and in any and all other limited liability companies in which CFG may have an interest with, with the unsatisfied portion of the Judgment entered in Universitas' favor against CFG for Charging Order on August 12, 2014 in the Southern District of New York, and filed with this Court on November 6, 2014."

Moreover, the Clerk's Judgment did not satisfy the clear-cut rules of F.R.C.P. Rule 58(b)(2) where, in an order that is doing more than reporting the jury verdict, it must be signed by

the District Court Judge. See Exhibit One. Recently, in an order involving the same parties dated March 31, 2020, Judge Swain denied Universitas relief, and stated that the court did not have subject matter jurisdiction citing the Supreme Court's ruling in *Peacock v. Thomas*, 516 U.S. 349 (1996). See Exhibit Two.

In the time since this Court's Charging Order, Universitas has been able to recover: $12,000,000 on February 27, 2018 from WSFS Bank for Christiana Bank, which was the Insurance Trustee for the Charter Oak Trust (see Exhibit Three); $4,487,007.81 on or about June 19, 2018 from the Grist Mill Trust (see Exhibit Four); $900,333.61 from BPETCO (see Exhibit Five); and over $500,000 from USAA (see Exhibits Six and Seven).

Since the Clerk's Judgment was not a valid judgment pursuant to Rule 58(b) because it was not signed by a District Court, and was void *ab initio*, and therefore could not be lodged as a valid judgment in this Court pursuant to 28 U.S.C. §1963, therefore, the Charging Order should be dissolved in its entirety and/or discharged pursuant to Rule 60(b)(5) for that reason; or in the alternative, should be vacated because it was never a valid judgment in the first place, and both Courts therefore lacked subject matter jurisdiction and personal jurisdiction over the Petitioner/Judgment Debtor CFG pursuant to the Supreme Court's decision in *Peacock v. Thomas*, citing the famous case from Connecticut, *H.C. Cook v. Beecher*:

> Our recognition of these supplementary proceedings has not, however, extended beyond attempts to execute, or to guarantee eventual executability of, a federal judgment. We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment. Indeed, we rejected an attempt to do so in *H.C. Cook Co. v. Beecher,* 217 U.S. 497, 30 S.Ct. 601, 54 L.Ed. 855 (1910). In *Beecher,* the plaintiff obtained a judgment in federal court against a corporation that had infringed its patent. When the plaintiff could not collect on the judgment, it sued the individual directors of the defendant corporation, alleging that, during the pendency of the original suit, they had authorized *358 continuing sales of the infringing product and knowingly permitted the corporation to become insolvent. We agreed with the Circuit Court's characterization of the suit as "an attempt to

make the defendants answerable for the judgment already obtained" and affirmed the court's decision that the suit was not "ancillary to the judgment in the former suit." *Id.,* at 498–499, 30 S.Ct., at 602. *Beecher* governs this case and persuades us that Thomas' attempt to make Peacock answerable for the ERISA judgment is not ancillary to that judgment. *Peacock v. Thomas*, 516 U.S. 349, 357–58, 116 S. Ct. 862, 868, 133 L. Ed. 2d 817 (1996).

Finally, the Clerk's Judgment does not specify "which of four" Carpenter Financial Groups are subject to the Clerk's Judgment. It does not specify whether it was an LLC or an INC, or Delaware or Connecticut. Therefore, CFG respectfully submits that the Charging Order in this matter should be vacated or dissolved, or in the alternative, that CFG be released pursuant to Rule 60(b)(5) as the Judgment against Petitioner CFG has been satisfied and paid in full.

## ARGUMENT

### I. Legal Standard

Federal Rule of Civil Procedure 60(b) codifies the post-judgment remedies available to a party seeking relief from a final judgment and specifically contemplates the situation where "the judgment has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5). A court may amend its prior judgment to the extent it "has been satisfied, released, or discharged." Fed. R. Civ. P. 60(b)(5) dictates that when one defendant in a multi-defendant action settles, the non-settling defendants are entitled to credit the amount of the settlement against any remaining judgment. *See, e.g.*, *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 303 (2d Cir. 2003) (*citing Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)).

Notwithstanding whether a debtor expressly delegates an obligation to a third party, "a performance rendered by [a] third person that is bargained for and received by [a] claimant in satisfaction of [a] claim operates as a discharge of the debtor." 13 Corbin on Contracts §70.6; *accord Mathias v. Jacobs*, 238 F.Supp.2d 556, 571-72 (S.D.N.Y. 2002) ("[The claimant] is entitled to the benefit of only one full performance and one satisfaction of a contractual debt; he cannot

3

collect twice to discharge the same obligation, whether payment is made by the promisor himself, by a third person, or by both."). "This common-sense precept of contract law does not require action by the debtor; if a third party negotiates with an obligee to pay the debt of an obligor, and the obligee accepts that payment, the obligor's debt is discharged. The obligee, as a matter of law and equity, is not entitled to double performance on the same contract." *In re Lehman Brothers Inc., Debtor,* 2016 WL 417594 at *6 (S.D.N.Y. July 6, 2016). *See, e.g., Okemo Mountain, Inc. v. United States Sporting Clays Ass'n,* 376 F.3d 102, 105 (2d Cir. 2004).

II. **The Charging Order Should Be Vacated Under Rule 60(b)(5) As The Judgment Has Been Satisfied Under the One Satisfaction Rule**

A non-settling defendant is "entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant as long as both the settlement and judgment represent common damages." *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989); *In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1031 (2d Cir. 1992), and 15 U.S.C. §78u-4(f)(7)(B). In such cases, the Second Circuit has applied a "One Satisfaction Rule" rather than a "proportionate responsibility rule," affording a non-settling defendant a reduction equal to the amount of a prior settlement. *Singer* at 600. *See, also, In re Facebook, Inc.,* 674 F. App'x 37, 39-40 (2d Cir. 2016).

A judgment creditor must give nonsettling defendants credit for at least the amount of ***any*** settlement of common damages, because if it did not, plaintiffs could recover from both the settling and nonsettling defendants for the same damages. "A plaintiff may not recover twice for the same injury." *Phelan v. Local 305*, 973 F.2d 1050, 1063 (2d Cir. 1992), *citing Ostano Commerzanstalt v. Telewide Systems*, 880 F.2d 642, 649 (2d Cir. 1989) (double recovery puts plaintiffs in better position than had they not been injured). The "One Satisfaction Rule" also requires that nonsettling defendants receive credit for any amount actually paid by settling defendants for common

4

damages. Thus, the Second Circuit has struck down a judgment reduction provision that gave credit for the lesser of the amount paid or the proportion of fault. *Masters Mates* at 1031. "Absent a showing that damages are not common, a nonsettling defendant whose rights against settling defendants are to be barred is entitled to judgment reduction at least in the amount paid by all settling parties." *Id.*

The Second Circuit's "one satisfaction rule ... prohibits a plaintiff from recovering more than one satisfaction for each injury." *Gerber* at 303 (*quoting Singer* at 600); *see also BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 517 F.3d 1271, 1277 (11th Cir. 2008)("The one-satisfaction rule ... operates to prevent double recovery, or the overcompensation of a plaintiff for a single injury."). The Supreme Court has stated the same: "If two or more defendants jointly cause harm, each defendant is held liable for the entire amount of the harm; provided, however, that the plaintiff recover only once for the full amount. *See* Restatement (Second) of Torts §875 (1977)." *Honeycutt v. United States*, 137 S. Ct. 1626, 1631 (2017).

A series of cases in the Second Circuit have explained that the "One Satisfaction Rule" requires that nonsettling defendants receive credit for settling defendants' share of common damages, that is, damages for which both the settling and nonsettling defendants are responsible. Settlements have been approved when they provided a judgment reduction formula that gave nonsettling defendants credit for the greater of (1) "the settlement amount for common damages," or (2) the "proportionate share" of the settling defendants' fault as proven at trial. *Gerber* at 303. This "capped proportionate share" formula is acceptable because it "ensures that a judgment credit is at *least* the amount of the settlement for common damages" and therefore complies with the one satisfaction rule. *Id.* (emphasis in original). *See, also, In re Facebook, Inc.,* 674 F. App'x 37 (2d Cir. 2016), In such cases, the Second Circuit has applied a "One Satisfaction Rule" rather than a

"proportionate responsibility rule," affording a non-settling defendant a reduction equal to the amount of a prior settlement. *Id.,* quoting *Singer* at 600.

A payment by any person made in compensation of a claim for a harm for which others are liable as tortfeasors diminishes the claim against the tortfeasors, at least to the extent of the payment made, whether or not the person making the payment is liable to the injured person and whether or not it is so agreed at the time of payment or the payment is made before or after judgment. Under this rule, when a plaintiff receives a settlement from one defendant, a nonsettling defendant is entitled to a credit of the settlement amount against any judgment obtained by the plaintiff against the nonsettling defendant. *See, e.g., Hess Oil Virgin Islands Corp. v. UOP, Inc*., 861 F.2d 1197, 1208 (10th Cir. 1988); *U.S. Industries, Inc*. at 1236; *see also* Restatement (Second) of Torts §885(3), comments e & f.

New York law does not permit for double recovery. *Zarcone v. Perry*, 78 A.D.2d 70, 79, 434 N.Y.S.2d 437, 443 (1980), aff'd, 55 N.Y.2d 782, 447 N.Y.S.2d 248, 431 N.E.2d 974 (1981). Accordingly, Rule 60(b)(5) may be utilized to correct a judgment to prevent double recovery. *See, e.g., Torres–Troche v. Municipality of Yauco*, 873 F.2d 499, 501 (1st Cir.1989) (finding, on Rule 60(b)(5) motion, that award should be offset by previous settlement to prevent double recovery); *Sunderland v. City of Philadelphia*, 575 F.2d 1089, 1090–91 (3d Cir.1978) (finding district court erred in denying Rule 60(b)(5) motion because "a district court does not have discretion to require two satisfactions, and the opposing party has suffered no prejudice from the moving party's delay in raising the satisfaction issue."); *see also Philips Lighting Co. v. Schneider*, No. 05-CV-4820 SLT MDG, 2014 WL 4274182, at *12 (E.D.N.Y. Aug. 28, 2014) ("To the extent that Eltron's underlying obligations, and thus Schneider's corresponding secondary obligation, has been

6

reduced through settlement and/or payments by Eltron, Schneider's obligations should also be reduced.").

### III. The Charging Order Violated the Three-Year Statute of Limitations under ERISA

As can be seen from the enclosed Affidavit by Sharon Siebert in the Massachusetts action Universitas brought against the Estate of Jack Robinson (see Exhibit Eight), she makes clear that Universitas knew the Charter Oak Trust was amended in January 2007 to include the 20% retention of proceeds by the Trust. As this Court knows, the Government always claimed that the Charter Oak Trust was never amended until *after* Sash Spencer died, and denied Mr. Carpenter's claims that the Trust ever did such an amendment *before* his death. In fact, and as the Affidavit unequivocally proves, the Plan Document *was* amended in January of 2007, and again in March of 2007 when Sash Spencer entered the Charter Oak Trust. The reason this is important is because Universitas has always claimed that Mr. Carpenter "stole" the funds, when it is clear from the Affidavit that the Plan was amended ***prior to*** Sash Spencer's death, and the Plan Documents have always shown that the primary beneficiary of all of the Charter Oak Trust policies was Grist Mill Capital. So, in acknowledging that Universitas knew about the 20% retention, this means that the claims by Universitas must also be reduced by $6 million, which is 20% of the $30 million.

The Court will also recall that this matches Mr. Carpenter's calculations submitted by the Government at trial in Government Exhibit 2225 attached as Exhibit Nine. More importantly, it is clear that the Sash Spencer applications were done some time prior to December of 2006, Mr. Carpenter was not indicted until December of 2013, and it was not until 2014 that Universitas brought its claim for getting the Charging Order issued based on the invalid Clerk's Judgment of August 12, 2014. The reason this is significant is because Sash Spencer died in 2008, and the original claims against the Charter Oak Trust were made in 2008 and 2009, which starts the three

7

year statute of limitations under ERISA, and as this Court knows, the Charter Oak Trust was always an ERISA welfare benefit trust.

Moreover, there is another problem with Universitas having a charging order for the Sash Spencer proceeds, as they were the illicit proceeds at the heart of the Money Laundering Counts of Mr. Carpenter's May 2014 Indictment. Therefore, if these were truly the proceeds of fraud, as determined by this Court's Verdict of June 06, 2014, then Universitas is not entitled to them because they were determined to be a fraud against Lincoln. In the alternative, if these are the proceeds of a legitimate welfare benefit trust, then bringing an action in Connecticut in 2014 was three years too late under the ERISA Statute of Limitations rule. Lastly, and as can be seen from Judge Swain's Order attached as Exhibit Two, under the Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349 (1996), it would have been necessary for Universitas to establish separate grounds and separate jurisdiction for pursuing claims against whatever Carpenter Financial Group entity they were going after. Because Universitas did not do that in Connecticut or the Southern District of New York, the Charging Order is invalid as a matter of law, and should be dissolved and/or vacated for any of the above reasons.

Finally, not only did this Court determine that the Sash Spencer proceeds were the proceeds of fraud, Universitas does not come to this Court with the "clean hands" required of a suit in equity. Extensive discovery has proven that Mr. Carpenter did not amend the Charter Oak Trust document after Mr. Spencer's death (See Exhibit Eight Siebert's Aff. at ¶ 13) and that he did not use those proceeds to buy the Rhode Island Beach House as alleged by the Government in their fraudulent press releases. Discovery has also proven that not a dime of the Spencer proceeds went to fund the building at 100 Grist Mill Road, which is the subject of this invalid Charging Order. But the biggest revelation is the fact that neither Sharon Seibert (Sash Spencer's Mistress) nor her neighbor the

putative "Notary" Barbara Kniffen ever visited Sash Spencer while he was dying in the Intensive Care Unit in May 2008. This has been one big "Fraud on the Court" by Universitas and its Counsel Joseph Manson.

**IV.     The Charging Order Should Be Vacated because CFG was never properly Served**

As can be seen from Exhibit Ten, Petitioner CFG was never properly served under Rule 4(e) by hand or mailing to its official address as required by Connecticut State Law. See affidavit of service attached as Exhibit Ten showing that no CFG Entity was not served at any known address.

"A judgment obtained in the absence of *in personam* jurisdiction is void." *Orix Fin. Servs. v. Phipps,* 2009 WL 2486012, at *2 (S.D.N.Y. Aug. 14, 2009) (*quoting China Mariners Assur. Corp. v. M.T. W.M. Vacy Ash,* 1999 WL 126921, at *3 (S.D.N.Y. Mar. 9, 1999) (*citing Jaffe & Asher v. Van Brunt,* 158 F.R.D. 278, 279 (S.D.N.Y. 1994)). "Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction over a defendant." *Am. Inst. of Certified Pub. Accountants v. Affinity Card, Inc.,* 8 F.Supp.2d 372, 375 (S.D.N.Y. 1998). A court lacks *in personam* jurisdiction where a judgment has been "obtained by defective service." *Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 103 (1987). Accordingly, a judgment obtained by way of defective service is void for lack of personal jurisdiction and must be set aside as a matter of law." *Id.* (*citing Howard Johnson v. Wang,* 7 F.Supp.2d 336 (S.D.N.Y. 1998)). Rule 4(e) governs the procedure for service of individuals. This rule states that proper service may be effected by, *inter alia*, "following state law for serving a summons ... in the state where the district court is located or where service is made." Fed. R. Civ. P. 4.

Here, Universitas purported to have served Petitioner CFG with the Charging Order Request and Affidavit. *See* Affidavit of Service attached as Exhibit Ten showing CFG was not

9

served by hand or at any address that CFG has had an office. Universitas did not effect proper service on Petitioner CFG as none of the addresses listed in the Affidavit are valid locations for Petitioner CFG or any other CFG Entity. Since Universitas did not effect proper service under the Rules of the State of Connecticut, this Court did not have personal jurisdiction over Petitioner and accordingly, the Charging Order should be vacated and/or dissolved. *See, e.g., United States v. Crosland,* 2018 WL 3029038 (E.D.N.Y. June 18, 2018).

Proper service of process in this case was non-existent as Petitioner CFG was never served or made aware of the filings. Even assuming Petitioner had proper notice of the action, which clearly it did not (as this Court knows that Mr. Carpenter was in prison at the time), the Second Circuit has rejected the argument that "actual notice" is sufficient to cure improper service. *See National Development Co. v. Triad Holding Corp.,* 930 F.2d 253, 256 (2d Cir. 1991); *GMA Accessories v. BOP, LLC,* 2008 U.S. Dist. LEXIS 26120, at *7 (S.D.N.Y. 2008). S*ee, also, Ins. Corp. of Ireland v. Compagnie Des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (regarding a federal court's acquisition of subject-matter jurisdiction, holding that the "consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings."). Therefore, this Court lacked personal jurisdiction and subject matter jurisdiction over CFG.

Since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party, especially when the defendant was not a party to the original arbitration, a judgment is void if the defendant was not properly served because the court is powerless to enter judgment against that defendant. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-87 (1988). This Motion must be granted if service of process was insufficient because "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service

of summons must be satisfied." *Omni Capital* at 104. Service of process must satisfy not only the rule under which service is made but also the constitutional requirement of due process. *Ackermann v. Levine*, 788 F.2d 830, 838 (2d Cir. 1986). To satisfy due process, the serving party must provide "notice reasonably calculated, **under all circumstances**, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust, Co.*, 339 U.S. 306, 314 (1950) (emphasis added). This, clearly, did not happen because the Charging Order request and Affidavit were never properly served on Petitioner CFG or any version of CFG for that matter.

    The requirement to direct the mailing to the attention of "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process is intended to ensure that the summons and complaint expeditiously reaches the appropriate decision maker in the organization." *Gowan v. HSBC Mortg. Corp. (USA) (In re Dreier LLP)*, 2011 WL 3047692, at *2 (Bankr. S.D.N.Y. July 22, 2011). Moreover, even if Universitas provided actual notice, **it did not cure the insufficient service of process** and confer personal jurisdiction. *See Triad Holding Corp.* at 256 (emphasis added). But, for the sake of this Motion to Vacate and Dissolve the Charging Order of October 27, 2015, this Court need only see that Universitas has been paid well more than the $11,140,000 that the alleged Judgment Debtor CFG owes, so therefore this Court should discharge, dissolve, and vacate the Charging Order as the law of the Second Circuit is clear that no matter what third party settles with Universitas, those amounts accrue to the benefit of Petitioner as a set-off under the "One Satisfaction Rule." *See, e.g.*, *Gerber v. MTC Elec. Techs. Co., Ltd.*, 329 F.3d 297, 303 (2d Cir. 2003) (*citing Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989)).

11

CFG submits that not only was service of process ineffective and improper in this case based on well-established Connecticut law and Second Circuit federal law, it did not occur at all. Attached as Exhibit Three is the Certificate of Service that was filed as Dkt. #7 in this case listing six address: four for Grist Mill Partners – all of which are incorrect – and two for CFG – both being the corporate agent of the company, which is not the agent for service of process for CFG. But even if they were, it still does not constitute proper service under Connecticut law. Unlike its federal counterpart, Connecticut law provides that a lawsuit is "brought" not upon the filing of the complaint, but upon service of process on the defendant. *See e.g. Kotec v. Japanese Educ. Inst.,* 321 F.Supp.2d 428, 431 (D.Conn. 2004) ("It is well settled that in Connecticut (unless otherwise specified by the legislature) a case is considered 'brought' for purposes of a statute of limitations on the date of service of the complaint upon the defendant and that, in a federal diversity action, such state rules control and not F.R.C.P. 3."). Thus, the CPLA's limitations period is not tolled in a federal diversity action until the defendant is served with a copy of the summons and complaint. *See Converse v. General Motors Corp.,* 893 F.2d 513, 515–16 (2d Cir. 1990) (affirming the dismissal of a complaint filed before, but served after, the expiration of the limitations period and stating "**the Connecticut Supreme Court has long adhered to the rule that only actual service upon the defendant will satisfy the state statute of limitations**").

Just as in *Converse*, in this case there was no service of process at the time the complaint was filed or anytime thereafter, and therefore the complaint should be dismissed as the statute of limitations period has clearly passed. Here, CFG did not file any waiver of service form and as a result of Universitas' failure to properly serve CFG, the suit never formally "commenced" under Connecticut law and the statute of limitations governing Universitas' claims was never tolled. The three-year limitations period, which continued to run while this litigation proceeded,

has long since expired in October 2012 at the latest and therefore Universitas' claims should be dismissed.

In this case, the CFG that owns Grist Mill Partners, LLC, which in turn owns the property at 100 Grist Mill Road, is a Delaware corporation doing business in Connecticut, and an officer of the company should have been served or a mailing should have been done to a valid address. Instead, Universitas sent service to 226 Mayapple Road, which is not only the incorrect address, but it has never been the address for Mr. Carpenter, let alone CFG. Similarly, Universitas never served anything to 100 Grist Mill Road or Mr. Carpenter's home address, despite the fact that they claim CFG was a criminal enterprise that ran other criminal enterprises from 100 Grist Mill Road. The reason for this is clear: Universitas knew that as of June 2014, Mr. Carpenter had reported to prison and Curaleaf took over 100 Grist Mill Road, so they failed to send anything to 100 Grist Mill Road or Mr. Carpenter's home address and instead filed service of processes to addresses unrelated to CFG.

For this reason alone, this Court should dismiss all claims against CFG and dissolve the Charging Order because Universitas never properly served CFG in violation of the laws of Connecticut and the Second Circuit.

## CONCLUSION

WHEREFORE, because the Petitioner has received through payments, along with the settlements from various other Judgment Debtors and Third Parties, more than the full amount of the $11,140,000 Charging Order, and that through the Second Circuit's "One Satisfaction Rule," any claims against CFG have now been satisfied, CFG moves this Court to immediately discharge and release CFG from, and/or vacate, the October 27, 2015 Charging Order which should be dissolved and/or vacated by this Court.

Dated: August 18, 2022

                              Respectfully Submitted
                              Carpenter Financial Group, Inc.,

                              */s/ Jonathan J. Einhorn*

                              JONATHAN J. EINHORN
                              129 WHITNEY AVENUE
                              NEW HAVEN, CT 06510
                              FEDERAL BAR NO. ct00163
                              EINHORNLAWOFFICE@GMAIL.COM

## CERTIFICATION

I hereby certify that on this 18th day of August, 2022, a copy of the foregoing was filed electronically and served by mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filings as indicated on the Notice of Electronic Filings. Parties may access this filing through the Court's CM/ECF System.

*/s/ Jonathan J. Einhorn*

JONATHAN J. EINHORN
129 WHITNEY AVENUE
NEW HAVEN, CT 06510
FEDERAL BAR NO. ct00163
EINHORNLAWOFFICE@GMAIL.COM