# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNIVERSITAS EDUCATION, LLC

                          Petitioner,

v.

NOVA GROUP, INC., ET AL.

                          Respondent.

CASE NO. 14-mc-00125-RNC

## PETITIONER'S RESPONSE TO CARPENTER FINANCIAL GROUP, INC.'S MOTION TO VACATE AND/OR DISSOLVE CHARGING ORDER

Petitioner Universitas Education, LLC ("Universitas"), respectfully submits this Memorandum of Law in Opposition to the Motion to Vacate filed by Carpenter Financial Group, Inc. ("CFG").

## I. INTRODUCTION

CFG moved to vacate the Charging Order entered in this matter <u>over six years ago</u> pursuant to Fed. R. Civ. P. 60(b)(5), and proceeded to make a scattershot of arguments entirely unrelated to Rule 60(b)(5) concerning, *inter alia*, service of process, statute of limitations, and subject matter jurisdiction. These arguments are meritless—a fact that is further demonstrated because they are identical to the arguments made by CFG in November of 2020 when it first moved to vacate the charging order before CFG and its counsel withdrew that motion. CFG's argument that the Charging Order should be vacated under Rule 60(b)(5) because $12 million paid to Universitas in settlement proceeds from a third party should be credited toward the judgment against CFG fails, *inter alia*, because Daniel Carpenter stole $30.6 million from Universitas – the payor of these proceeds did not participate in, or benefit from, this theft, and it would violate every principle of equity to allow Mr. Carpenter to keep $12 million that he stole. Moreover, the underlying judgment

**ORAL ARGUMENT IS NOT REQUESTED**

has not been vacated despite Mr. Carpenter's and Grist Mill Capital's recent efforts before the Southern District of New York, and thus there are no grounds to vacate the Charging Order under Rule 60(b)(5).

CFG's arguments should be brought, if at all, in the court that rendered the judgment – where Daniel Carpenter simultaneously filed a motion to vacate the judgment under Rule 60(b), which the court soundly rejected and sanctioned him for bringing. *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-cv-1590 (LTS) (HBP), 2021 U.S. Dist. LEXIS 1185733 (S.D.N.Y. Sept. 28, 2021). CFG's motion to vacate is a meritless part of Mr. Carpenter's protracted efforts to obstruct Universitas' attempts to collect its judgment against him and various entities under his control. Every argument asserted by CFG is either inapplicable to a registered judgment, and/or is currently being litigated in another federal court because Mr. Carpenter asserted the same argument there.[1]

## II.   **FACTUAL BACKGROUND**

This Court is familiar with the facts of this case, and thus Universitas will only provide a brief overview of the facts pertinent to CFG's Motion to Vacate.

### a.   Background on Spencer Money

Sash Spencer took out two life insurance policies totaling $30 million through the Charter Oak Trust Welfare Benefit Plan ("COT") and made Universitas the sole, irrevocable beneficiary of both policies. *Universitas Educ., LLC v. Nova Group, Inc.*, 784 F.3d 99, 100 (2d Cir. 2015). Nova Group, Inc. ("Nova") was the trustee, sponsor, and fiduciary of COT. *Id.* Mr. Carpenter

---

[1] Universitas intends to move for sanctions against both CFG and CFG's counsel. CFG's motion to vacate is a continuation of the vexatious and sanctionable conduct Mr. Carpenter has employed for almost a decade in order to prevent Universitas from recovering the money that Mr. Carpenter stole for his personal use. After accounting for post-judgment interest and attorneys' fees, Mr. Carpenter owes Universitas an excess of $57 million. Mr. Carpenter is desperately trying to prevent this recovery with frivolous and erroneous arguments, most of which have already been rejected by the courts.

controlled both COT and Nova. *See Universitas Educ., LLC v. Nova Grp., Inc.*, Case No. 11-civ-1590 (LTS)(HBP), 2013 U.S. Dist. LEXIS 165803, at *5 (S.D.N.Y. Nov. 20, 2013). Mr. Spencer unexpectedly died, and Mr. Carpenter and his associates subsequently altered the COT Declaration of Trust to include a holdback provision providing that COT could retain twenty percent of the Spencer life insurance proceeds. *See United States v. Carpenter*, 190 F. Supp. 3d 260, 293-94 (Dist. Conn. 2016).

Nova acknowledged that it had a "legal and fiduciary duty to pay to [Universitas] the Life Insurance Proceeds …." *Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803 at *35-*36. However, when Universitas inquired about the status of its claim for these proceeds, Mr. Carpenter instructed his colleagues to write a letter telling Universitas to "eat s*** and die." (*See* (Tr. of Bench Trial Day 14 [ECF #500] *United States v. Carpenter*, Case No. 3:13-cr-226-RNC (D. Conn. Mar. 9, 2016)). Nova then "wrongly rejected" Universitas' claim to the Spencer insurance proceeds, and Mr. Carpenter fraudulently defalcated the entirety of the Spencer insurance proceeds through a deliberately complicated series of bank transfers designed to shield these proceeds from Universitas. *See Universitas Educ.*, 2013 U.S. Dist. LEXIS 165803. Mr. Carpenter used these stolen proceeds for his personal benefit, *inter alia*, by purchasing a luxurious vacation property. *See id.* This Court subsequently determined that Mr. Carpenter's use of the Spencer proceeds constituted felonious criminal activity and convicted Mr. Carpenter, *inter alia*, on ten counts of money laundering, thirteen counts of illegal monetary transactions, and conspiracy to commit money laundering in relation to the Spencer proceeds. *See Carpenter*, 190 F. Supp. 3d at 293-94.

   b. <u>Procedural History</u>

Universitas challenged the denial of its claim by filing a demand for arbitration. *See Universitas Educ.,* 784 F.3d at 100. Universitas won this arbitration, and the arbitration award was

subsequently confirmed by the Southern District of New York in a proceeding before Hon. Judge Swain. *See Universitas Educ., LLC v. Nova Group, Inc.*, Case No. 11-cv-1590, 2012 U.S. Dist. LEXIS 79295 (S.D.N.Y. June 5, 2012). Universitas then filed a turnover motion seeking the Spencer proceeds, and the court entered judgment against certain recipients of the Spencer proceeds in the amount fraudulently conveyed to each entity. *See Universitas Educ., LLC v. Nova Grp., Inc.*, Case Nos. 11-civ-1590 (LTS)(HBP) and 11-civ-8726 (LTS)(HBP), 2014 U.S. Dist. LEXIS 109077 (S.D.N.Y. Aug. 7, 2014). Mr. Carpenter controlled all of the recipients of the Spencer proceeds, and thus the court also entered judgment against Mr. Carpenter for the entirety of the stolen proceeds. *See id.* One of the judgment debtors in the turnover proceeding was CFG.[2] *See id.* Universitas' subsequently moved to register the judgment in other districts, and CFG did not oppose. (Order [ECF #1].) Universitas registered the judgment with this Court, and subsequently moved for a Charging Order against CFG, including its interest in Grist Mill Partners, LLC ("GM Partners"). (Mot. [ECF # 3].) This motion and the relevant documents were served upon CFG. (Aff. [ECF #7].) CFG did not appear in this proceeding and/or oppose Universitas' motion for a Charging Order, and the Court thus entered a Charging Order against CFG. (Order [ECF #9].)

      c.  <u>Other Relevant Proceedings.</u>

     In May of 2020 Universitas filed a post-judgment collection suit in the District of Connecticut seeking to enforce its judgment upon entities under Mr. Carpenter's control and/or persons affiliated with Mr. Carpenter on an alter ego theory of liability. That case is proceeding before Hon. Judge Meyer. Among the defendants in that case is GM Partners and various charitable

---

[2] This Court previously noted that CFG played an integral role in the criminal enterprise operated from 100 Grist Mill Road. *See Carpenter*, 190 F. Supp. 3d at 286 n. 41 (discussing how Mr. Carpenter used CFG to control entities operating from 100 Grist Mill Road).

trusts for which Mr. Carpenter is the sole trustee. The charitable trusts filed a motion to dismiss arguing, *inter alia*, that the money recovered by Universitas through its settlement with Wilmington Saving Funds Society, FSB ("WSFS") should be credited toward the judgment and foreclose further collection of Universitas' judgment.[3] (Ex. 1 at 12.) The Court did not address this argument in its decision, which dismissed some of the defendants. A second rounds of motions to dismiss are now pending before Judge Meyer.

Mr. Carpenter also moved to vacate the underlying judgment in the proceeding before Hon. Judge Swain. Mr. Carpenter argued, *inter alia*, that the judgment should be vacated under Rule 58(b) because Hon. Judge Swain did not personally sign the judgment. (Ex. 2 at 11-13.) Hon. Judge Swain rejected all the arguments made by Mr. Carpenter and Grist Mill Capital and found many of the arguments advanced by Mr. Carpenter to be sanctionable.

d.   Rebuttal Facts.

CFG's motion to vacate contains numerous demonstrably false statements that require correction. For instance, CFG claims that the affidavit of Universitas' member Sharon Siebert demonstrates that the alteration to the COT Trust Document was not the result of Mr. Carpenter falsifying the document. CFG misrepresents Ms. Siebert's affidavit, which says that Mr. Carpenter and his affiliates told her that the Trust Document was altered before Mr. Spencer died and that she initially believed Mr. Carpenter and his affiliates when they told her this.[4] (Holmes Decl., Ex.

---

[3] WSFS purchased Christiana Corporate Services, Inc. after the underlying events transpired. This Court referred to this entity as Christiana Bank in Mr. Carpenter's criminal proceedings. *See Carpenter*, 190 F. Supp. 3d 260. Universitas filed suit against WSFS on the basis of successor liability from Christiana Corporate Services, Inc.

[4] Ms. Siebert then explicitly states that the statements concerning changes to the Trust Document in 2007 were among the numerous "misrepresentations" that Mr. Carpenter and his associates made to her, and further states that she would have filed suit immediately had she known these statements were false, rather than attempting to resolve the issue informally and through arbitration. (Holmes Decl., Ex. 8 [ECF #11-10] ¶ 14.)

8 [ECF #11-10] ¶¶ 12-13.) CFG's claim about the beneficiary of the Spencer insurance policies is also demonstrably false – Universitas was the sole and irrevocable beneficiary of these policies. *See Carpenter*, 190 F. Supp. 3d at 293. It is also untrue that Universitas settled with Grist Mill Trust for $4,487,007.81. Judgment was entered against Grist Mill Trust for $4,487,007.81, but this liability was settled for less than the full amount of the judgment.

CFG's attempt to extricate Mr. Carpenter from the fraudulent conduct surrounding the Spencer insurance policies fails because this Court expressly found that Mr. Carpenter was responsible for this fraud. *See Carpenter*, 190 F. Supp. 3d at 296-301. CFG's claim that Hon. Judge Swain stated that the court did not have subject matter jurisdiction in an order involving the same parties is demonstrably false on multiple levels. Hon. Judge Swain did not state the court lacked subject matter jurisdiction – she denied the requested relief as improper letter motions without prejudice to formal motion practice. Nor did that order concern the same parties as CFG was not involved with Universitas' requests in any manner.

III.    **LEGAL STANDARD**

Motions to vacate a judgment pursuant to Fed. R. Civ. P. 60(b) are disfavored. *See Empresa Cubana del Tabaco v. Gen. Cigar Co.*, 385 F. App'x 29, 31 (2d Cir. 2010) (internal citations omitted); *see also Martinez v. Kirkpatrick*, No. 9:09-cv-00900 (MAD), 2017 U.S. Dist. LEXIS 69608, at *9 (N.D.N.Y. May 8, 2017) ("Relief under Rule 60(b) is 'generally not favored and is properly granted only upon a showing of exceptional circumstances.'") (quoting *Ins. Co. of N. Am. v. Pub. Serv. Mut. Ins. Co.*, 609 F.3d 122, 131 (2d Cir. 2010)). Relief under Rule 60(b) requires, *inter alia*, highly convincing supportive evidence and good cause for the failure to act sooner. *See Martinez*, 2017 U.S. Dist. LEXIS 69608 at *9 (internal citations omitted). Rule 60(b) motions are committed to the sound discretion of the Court. *See Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir.

2012) (quoting *In re Emergency Beacon Corp.*, 666 F.2d 754 (2d Cir. 1981)). Fed. R. Civ. P. 60(b)(5) provides, in relevant part, that courts may vacate a judgment that has been "satisfied, released, or discharged," and/or a judgment that "is based on an earlier judgment that has been reversed or vacated." *See* FED. R. CIV. P. 60(b)(5).

IV.   **ARGUMENTS**

CFG's motion does not provide grounds for relief under Rule 60(b) as there is no allegation of exceptional circumstances to justify relief under Rule 60(b) and/or any explanation for CFG's failure to act sooner.[5] *See Martinez*, 2017 U.S. Dist. LEXIS 69608 at *9 (explaining that relief under Rule 60(b) is "properly granted only upon a showing of exceptional circumstances" and requires good cause for the failure to act sooner). The Court should deny relief pursuant to Rule 60(b)(5) for the simple reason that the judgment has neither been vacated nor satisfied. *See* FED. R. CIV. P. 60(b)(5). Mr. Carpenter filed a motion to vacate the underlying judgment – that motion has not been granted and thus does not provide grounds for relief pursuant to Rule 60(b)(5). *See Mayberry v. Maroney*, 529 F.2d 332, 336 (3d Cir. 1976) (providing that the original judgment stands as written, even if the movant's allegations justify relief under Rule 60(b)(5), until the underlying judgment is vacated or reversed by the court); *In re Kelsall*, No. 04-10374-JM7, 2005 Bankr. LEXIS 3296, at *8-*9 n. 2 (Bankr. S.D. Cal. Aug. 12, 2005) (explaining that relief pursuant to Rule 60(b)(5) is irrelevant unless the underlying judgment is reversed or vacated). To the extent CFG seeks relief from the judgment, it should likewise move for such relief before Hon. Judge

---

[5] CFG cannot complain that it was previously unaware of the Charging Order. CFG's registered agent was properly served in 2013. Moreover, the scope of the Charging Order issued in this Court was litigated before Hon. Judge Swain in the underlying proceeding. (Ex. 3 ¶ 4.) CFG was a party to that litigation, and thus clearly aware of the Charging Order. Hon. Judge Swain's order was entered the month after this Court entered the Charging Order, and thus there is no excuse for CFG's failure to act sooner.

Swain. *See SEC v. Gellas*, 1 F. Supp. 2d 333, 335 (S.D.N.Y. 1998) ("… a Rule 60(b) motion must be brought in the court that rendered the disputed order.") (internal citations omitted).

CFG's argument that it can satisfy its debt to Universitas by crediting the WSFS settlement proceeds against the judgment fails, *inter alia*, because it would allow Mr. Carpenter to profit $12 million from his theft of Universitas' money. *See Liu v. SEC*, 140 S. Ct. 1936, 1943 (2020) (explaining that "the wrongdoer should not profit from his own wrong"). CFG's argument concerning overcompensation is also incorrect. *See McDermott, Inc. v. Amclyde*, 511 U.S. 202, 219 (1994) (providing that there is no rule against overcompensation). The Court should further decline to provide relief under Rule 60(b)(5) to Daniel Carpenter because such a result would be inequitable. *See Thai-Lao Lignite (Thail.) Co. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 183-85 (2d Cir. 2017) (explaining that Rule 60(b) should be "broadly construed so as to do justice" and further explaining that courts should consider whether movant has acted equitably when ruling on Rule 60(b)(5) motions).

   a.   The Court Should Abstain from Ruling on CFG's Arguments Concerning the One Satisfaction Rule on Comity Grounds.

One of the primary arguments asserted in CFG's motion to vacate are currently before another federal district judge. The Court should abstain from ruling on this issue on comity grounds in order to prevent the possibility of irreconcilable conflicting court orders concerning these issues. *See Church of Scientology v. United States Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979) (explaining that the purpose of the comity doctrine is to avoid placing an unnecessary burden on the federal judiciary and avoid the embarrassment of conflicting judgments), *rev'd on unrelated grounds*; *see also Terket v. Lund*, 623 F.2d 29, 33 (7th Cir. 1980) (providing that courts should seek to avoid the "confusion and waste of time that might flow from putting the same issues before two courts at the same time.").

This Court should abstain from ruling on CFG's argument concerning the applicability of the WSFS settlement toward Universitas' collection efforts so that Hon. Judge Meyer may rule on this issue. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (providing that courts should act so as to foster judicial economy and protect litigants from vexatious and expensive litigation."). Although comity typically applies to actions in their entirety, courts can abstain from individual issues on comity grounds. *See In re Johnson*, 565 B.R. 835, 845 (Bankr. S.D. Ohio 2017) (explaining that "…permissive abstention is warranted on this single issue… in the interest of comity ….") (internal citations omitted); *see also In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 772-777 (2d Cir. 1996) (discussing court's abstention from single issue in case). Respectfully, this Court, rather than Hon. Judge Meyer, should abstain from ruling on the WSFS settlement issue because the issue was brought before Hon. Judge Meyer prior to CFG filing its motion, and comity provides that the first court to obtain jurisdiction over a particular issue should determine that issue. *See AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 722 (2d Cir. 2010) (explaining that "[d]eference to the first filing embodies considerations of judicial administration and conservation of resources, and recognizes that a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter.") (internal citations omitted); *Church of Scientology*, 611 F.2d at 749 (explaining that comity permits district court to decline jurisdiction over a matter if it is already before another district court); *see also Orthmann v. Apple River Campground Inc.*, 765 F.2d 119, 121 (8th Cir. 1985) (explaining that precedence is given to first court to obtain jurisdiction over the issue rather than first case filed). The Court should also defer to Hon. Judge Meyer on this issue because Hon. Judge Meyer already held oral argument on the motion making this argument, and thus the issue has progressed further in that proceeding. *See Church of*

*Scientology*, 611 F.2d at 750 (explaining that court where matter has progressed further should take precedent over matter that was filed first). Although Judge Meyer has not yet addressed the issue, it remains before him and will be an integral part of determining the amount of recovery, if any, to which Universitas is entitled.

The proceeding before Hon. Judge Meyer also has a broader scope than this proceeding, and thus Hon. Judge Meyer has a greater appreciation for the effects that the relief requested by CFG, which has also moved to intervene in that case, would have upon other matters subject to litigation. *See N.Y. Power Auth. v. United States*, 42 Fed. Cl. 795, 802 (1999) ("Where two [arguments] based on the same operative facts are filed in two courts, the court with the narrower claim should stay its case in favor of the court with the broader claim. As stated by our predecessor court, 'it is ordinarily better to centralize the proceedings in the tribunal which has the widest scope to handle all the parts of what is in commonsense one unified piece of litigation.'").

CFG's argument is a grave oversimplification, as the $11.14 million judgment entered against CFG is no longer the relevant number. Substantial post-judgment interest has accumulated on Universitas' judgment, and this interest must be accounted for when determining whether the judgment against CFG has been satisfied. Universitas is also seeking damages in the form of lost profits, specifically in regard to rental income concerning property owned by GM Partners. The court also awarded Universitas millions of dollars in attorneys' fees and found that certain entities under Mr. Carpenter's control are liable for all of Universitas' attorneys' fees throughout the entirety of Universitas' post-judgment collection efforts. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 143667. Mr. Carpenter has not paid any of these attorneys' fees, and Universitas' ability to collect these fees from other entities and/or persons on an alter ego theory of liability is the subject of litigation in the proceeding before Hon. Judge Meyer. The Court should therefore defer

to Hon. Judge Meyer on the issue of the WSFS settlement proceeds because he has been briefed on these intertwined issues and, respectfully, is in a better position to determine not only whether the WSFS settlement proceeds should be credited to Universitas' judgment, but also whether doing so would satisfy CFG's liability to Universitas and/or the amount of CFG's outstanding liability after crediting the WSFS settlement proceeds. *See Island Nat'l Ins. Co. v. Champlain Villas Ltd. P'ship*, 27 V.I. 147, 150 (1992) (providing that principles of comity and sound judicial administration suggest that courts with more familiarity with relevant details is better equipped to rule on relevant issue); *see also Anderson v. Snyder-Norris*, Civil Action No. 15-CV-57-HRW, 2015 U.S. Dist. LEXIS 116884, at *14 (E.D. Ky. Sep. 2, 2015) (deferring issue to court "better equipped" to resolve that issue).

> b.  The One Satisfaction Rule does not Apply to CFG.

To the extent the Court considers CFG's argument that crediting the WSFS settlement against Universitas' judgment in accordance with the "one satisfaction rule" satisfies the judgment against CFG, this argument fails. Although Universitas disputes the amounts alleged by CFG, Universitas agrees that recovery from and/or on behalf of the various judgment debtors is credited against the outstanding judgment. However, the WSFS settlement proceeds are not credited against Universitas' outstanding judgment, and thus the judgment against CFG has not been satisfied, released, or discharged, and there are no grounds to vacate the Charging Order under Rule 60(b)(5). *See* FED. R. CIV. P. 60(b)(5).

The "one recovery rule" holds that a settlement from one defendant entitles other defendants to a corresponding credit against the judgment against them when the settlement and the judgment represent common damages. *See Singer v. Olympia Brewing Co.*, 878 F.2d 596, 600 (2d Cir. 1989). The judgment against CFG and the WSFS settlement proceeds are not "common

damages" – the WSFS settlement was for breach of fiduciary duty for allowing Mr. Carpenter to steal $30.6 million. WSFS was not involved in Mr. Carpenter's criminal activity, nor did it benefit from Mr. Carpenter's criminal activity. Thus, the recovery from WSFS is clearly subject to the collateral source rule. *See Restatement (Second) of Torts* § 920A(2); *see also Melo v. Allstate Ins. Co.*, 800 F. Supp. 2d 596, 598 (D. Vt. 2011) (explaining that the purpose of the collateral source rule is "'to prevent the wrongdoer from escaping liability for his or her misconduct,' regardless of whether a plaintiff may ultimately also be compensated for injuries by a source independent of the tortfeasor.") (internal citations omitted).

The collateral source rule provides that a debtor is not entitled to avoid liability for damages as a result of a plaintiff's settlement with a collateral source. *See Thyssen, Inc. v. S/S Eurounity*, 21 F.3d 533, 537 (2d Cir. 1994); *see also Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 623 n.15 (2d Cir. 2001) ("The collateral source doctrine holds that, as a general rule, a plaintiff may recover damages that include amounts for which the plaintiff has already been compensated through sources wholly independent of and collateral to the wrongdoer.") (internal citations omitted); *Ebert v. City of N.Y.*, 2006 U.S. Dist. LEXIS 43337, at *2-*3 (S.D.N.Y. June 26, 2006) (explaining that the collateral source rule "is an established exception to the general rule that damages in a negligence action must be compensatory, [because] a wrongdoer is not permitted to reduce a plaintiff's recovery because of benefits which the latter may have received from another source.") (citing *Cunningham v. Rederiet Vindeggen A/S,* 333 F.2d 308 (2d Cir. 1964)). A collateral source is "a payment that is independent of the defendant and one that the defendant played no part in creating." *See Doe v. Darien Bd. of Educ.*, No. 3:11cv1581 (JBA), 2015 U.S. Dist. LEXIS 158261, at *6-*7 (D. Conn. Nov. 24, 2015) (internal citations omitted). The collateral source rule is "intended to ensure that any 'benefit that is directed to the injured party from a third

12

party is not shifted so as to become a windfall for the tortfeasor' since 'it is the tortfeasor's responsibility to compensate for all harm that he causes.'" *See Moran Towing & Transp., Co. v. Lombas*, 58 F.3d 24, 27 (2d Cir. 1995) (quoting *Restatement (Second) of Torts* § 920A(2) cmt. b).

Mr. Carpenter stole $30.6 million from Universitas and is thus responsible for compensating Universitas for this wrongdoing. *See Universitas Educ.*, 2014 U.S. Dist. LEXIS 109077; *see also Moran Towing*, 58 F.3d at 27 ("it is the tortfeasor's responsibility to compensate for all harm that he causes."). Universitas' settlement with WSFS created a windfall – this windfall benefits Universitas and not Mr. Carpenter and/or the other judgment debtors. *See Darien Bd. of Educ.*, 2015 U.S. Dist. LEXIS 158261 at *6 ("The rationale for the [collateral source] rule is to prevent the defendant from receiving a windfall by avoiding liability for damages suffered by the plaintiff as a result of the defendant's conduct.") (internal citations omitted). As explained by the Second Circuit Court of Appeals:

> [T]he question is not whether a windfall is to be conferred, but rather who shall receive the benefit of a windfall which already exists. As between the injured person and the tortfeasor, the former's claim is the better. This may permit a double recovery, but it does not impose a double burden. The tortfeasor bears only the single burden for his wrong.

*Thyssen*, 21 F.3d at 537-38 (quoting *Gypsum Carrier, Inc. v. Handelsman,* 307 F.2d 525, 534 (9th Cir. 1962)). Crediting the WSFS settlement proceeds against Universitas' outstanding judgment would violate the collateral source rule by enabling Mr. Carpenter to keep $12 million in stolen funds, and thus create a windfall for these judgment debtors. *See Moran Towing*, 58 F.3d at 27; *see also Yost v. Am. Overseas Marine Corp.*, 798 F. Supp. 313, 319 (E.D. Va. 1992) (explaining that any windfall created by collateral source payments is payable to the injured party and not the wrongdoer as a matter of public policy).[6]

---

[6] This same logic also applies to CFG's argument that, because the Spencer insurance policies

c. <u>CFG Cannot Vacate the Charging Order Under Rule 58(b).</u>

CFG's argument that the judgment is unenforceable pursuant to Rule 58(b) is barred by *res judicata* and/or issue preclusion. Daniel Carpenter has already made this argument before Judge Swain, and she not only rejected the argument, but sanctioned Mr. Carpenter for making it. *Universitas*, 2021 U.S. Dist. LEXIS 185733 at *35. ("[T]his Court has located no existing case law supporting Mr. Carpenter's argument that a separate judgment signed by the Clerk of Court may be declared void, pursuant to Rule 60(b)(4) or (b)(6), several years after that judgment is issued, for lack of a district judge's signature, and Mr. Carpenter proffered no nonfrivolous argument to interpret the law in that fashion.") Under New York law, which will likely be applicable here for the *res judicata* and issue preclusion analysis as the underlying judgment is a New York judgment. *Res judicata* bars successive litigation "based on the same transaction or series of connected transactions if:" (1)  there "is a judgment on the merits rendered by a court of competent jurisdiction," and (2) the party "against whom the doctrine is invoked was a party to the previous action, or in privity with a party who was . . . ." *People ex rel. Spitzer v. Applied Card Sys. Inc.*, 894 N.E.2d 1, 12 (N.Y. 2008); *Flowers v. Connecticut Light & Power Co.*, No. 21-860-cv, 2021 U.S. App. LEXIS 35105, at *2 (2d Cir. Nov. 29, 2021). Issue preclusion applies "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) the issue was necessary to support a valid and final judgment on the merits." *Rojas v. Romanoff*, 186 A.D. 3d 103, 108 (N.Y. App. Div. 2020). While issue preclusion generally only

---

were obtained as a result of Mr. Carpenter's fraud upon the insurance carrier, the policies are fraudulent and Universitas should not be entitled to recover fraudulent proceeds. (CFG Mem. [ECF #11-1] at 8.) Mr. Carpenter should not profit from his criminal activity. *See Liu*, 140 S. Ct. at 1943 (explaining that "the wrongdoer should not profit from his own wrong").

applies against a party bound by the prior proceeding, Mr. Carpenter's complete control over CFG makes issue preclusion applicable here.

Under either standard, CFG is precluded from making this argument here. CFG is clearly in privity with Mr. Carpenter, as he fully controls it and has used it as part of his criminal network to steal the insurance proceeds from Universitas. Judge Swain rendered a final judgment on the merits when she rejected the argument after Mr. Carpenter had a full opportunity to brief it. *Universitas*, 2021 U.S. Dist. LEXIS 185733 at *29-*30. The issue presented before this Court is identical to the one before Judge Swain, and it was an integral part of upholding the judgment against Grist Mill Capital, Mr. Carpenter, and CFG. Thus, because the Judge Swain already decided the issue, this Curt should find that CFG is estopped from arguing it again.

To the extent the Court considers whether the judgment against CFG is unenforceable pursuant to Rule 58(b), this argument is frivolous. CFG seeks relief under Rule 60(b)(5), which concerns judgments that have been satisfied and/or vacated – Rule 60(b)(5) does not provide grounds for attacking the signature on the underlying judgment. *See* FED. R. CIV. P. 60(b)(5). CFG's argument is also entirely self-defeating. If CFG is correct and the judgment is rendered illegitimate, then judgment was automatically entered 150 days after the court order was entered. *See* FED. R. CIV. P. 60(c)(2)(b); *see also Dancause v. Mount Morris Cent. Sch. Dist.*, 590 F. App'x 27, 28 n. 1 (2d Cir. 2014) ("[T]he district court did not enter judgment in a separate document. In the absence of a separate document, however, judgment is deemed entered 150 days after the order … is entered.") (internal citations omitted). The Charging Order was issued more than 150 days after the judgment was registered in this Court. (Order [ECF #8].) Thus, even if CFG succeeds in its attack upon the signature, the Charging Order would still be predicated upon a valid judgment, and there would be no grounds for relief under Rule 60(b)(5). CFG provides no legal authority to

support its argument that a judgment signed by the clerk of court cannot be enforced in conjunction with a court order to register the judgment in a foreign jurisdiction, or for its claim that Rule 60(b)(5) provides grounds for attacking the signature on an underlying judgment.

        d.  CFG's Attacks on the Merits of the Underlying Judgment.

CFG cannot vacate the Charging Order by attacking the merits of the underlying judgment.[7] *See MAVL Capital, Inc. v. Marine Transp. Logistics, Inc.*, 771 F. App'x 56, 57 (2d Cir. 2019) ("A Rule 60 motion may not be used 'simply to relitigate matters settled by the original judgment.'") (quoting *Donovan v. Sovereign Secur., Ltd.*, 726 F.2d 55 (2d Cir. 1984)); *see also Hoi Wan v. United States Postal Serv.*, No. 17-CV-1560(KAM)(LB), 2018 U.S. Dist. LEXIS 63007, at *5-*6 (E.D.N.Y. Apr. 13, 2018) ("Although an argument in this vein might have been appropriate in a timely objection … [the] argument is misplaced in the context of a Rule 60(b) motion, which is not … a vehicle for arguing the merits of the underlying judgment.") (internal citations omitted); *Scherer v. Hill*, 213 F.R.D. 431, 432 (D. Kan. 2003) ("[A] motion under Rule 60(b) is not a second opportunity for the losing party to make its strongest case, to rehash arguments, or to dress up arguments that previously failed.") (internal citations omitted). Accordingly, CFG's arguments concerning the Spencer policy beneficiary, subject matter jurisdiction over the underlying judgment, statute of limitations for the underlying judgment, and reductions to the underlying judgment are not grounds for vacating the Charging Order. *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 n. 3 (2d Cir. 1999) ("[A] party cannot seek to avoid the res judicata effect of an earlier judgment by arguing that the court entering the judgment had lacked subject matter jurisdiction over the case."); *Deep v. Boies*, No. 1:09-MC-

---

[7] Nor does Rule 60(b)(5) provide grounds for vacating an erroneous judgment. *See* FED. R. CIV. P. 60(b)(5).

0073 (DNH/DEP), 2009 U.S. Dist. LEXIS 136782, at *11-*12 (N.D.N.Y. Dec. 18, 2009) ("[B]y now raising the argument in this court in response to judgment enforcement efforts, plaintiff is engaged in an impermissible attempt to collaterally attack the merits of the underlying judgment."), *adopted in* 2010 U.S. Dist. LEXIS 149150 (N.D.N.Y. Jan. 8, 2010); *Restatement (Second) of Judgments* § 18(2) ("In an action upon the judgment, the defendant cannot avail himself of defenses he might have interposed, or did interpose, in the first action.").

      e.   <u>The Court has Subject Matter Jurisdiction over this Proceeding.</u>

CFG's subject matter jurisdiction argument is predicated upon a gross misrepresentation of *Peacock v. Thomas* – *Peacock* distinguished between actions seeking to establish liability on behalf of a third party and actions to collect a judgment, and required the former actions to have an independent source of federal subject matter jurisdiction. *See Peacock v. Thomas*, 516 U.S. 349 (1996); *see also Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 104 (2d Cir. 2001) (explaining jurisdictional limitations from *Peacock*). The Charging Order was an enforcement of the judgment against CFG and did not create any liability on behalf of GM Partners or any other party. *See* Conn. Gen. Stat. § 34-171 ("To the extent so charged, the judgment creditor has only the rights of an assignee of the member's limited liability company interest."); *see also Restatement (Second) of Judgments* § 32 (explaining that cases wherein creditor seeks to apply "thing" to satisfaction of a judgment do not create liability). Therefore, this proceeding is within the Court's ancillary enforcement jurisdiction and *Peacock* does not require the Court to establish an independent basis for subject matter jurisdiction. *See Peacock*, 516 U.S. 349; *see also Epperson*, 242 F.3d at 104. Even if an independent basis for subject matter jurisdiction were required, the Court would still have subject matter jurisdiction pursuant to diversity of citizenship as CFG is a Delaware company with its primary place of business in Connecticut, (Ex. 4,) and Universitas is an LLC whose

members are citizens of New York. *See Universitas Educ.*, 513 Fed. App'x at 63 ("Universitas is a citizen of New York because it is a limited liability company whose members are domiciled in New York."). The Court therefore has diversity jurisdiction over this proceeding as there is diversity of citizenship and Universitas is attempting to enforce a judgment against CFG in excess of $11 million. *See* 28 U.S.C. § 1332. It is uncontroverted that *Peacock* is not implicated when the court has diversity jurisdiction. *See C.F. Trust, Inc. v. First Flight Ltd. P'Ship*, 306 F.3d 126, 133 (4th Cir. 2002); *Shaw v. AAA Eng'g & Drafting Inc.*, 138 Fed. Appx. 62, 68 (10th Cir. 2005); *see also CSX Transp., Inc. v. Filco Carting Corp.*, No. 10-CV-1055 (NGG) (JMA), 2011 U.S. Dist. LEXIS 74625, at *3-*5 (E.D.N.Y. July 7, 2011) (explaining that *Peacock* is inapplicable when plaintiff establishes federal subject matter jurisdiction by means of diversity jurisdiction).

   f. <u>CFG was Properly Served with Process.</u>

   CFG's service of process argument is entirely meritless. Fed. R. Civ. P. 4(e) expressly authorizes service of process in accordance with the law of the state where a district court is located. *See* FED. R. CIV. P. 4(e). CFG is a Delaware company and thus is a foreign corporation. (Ex. 4.) Connecticut authorizes service of process upon a foreign corporation by service upon the company's registered agent. *See* Conn. Gen. Stat. § 33-929. Universitas served process upon CFG's registered agent. (*See* Ex. 4; Aff. [ECF #7].) CFG does not dispute that Universitas served process upon its registered agent, but simply complains that it was not served with process by hand and/or at its offices. Any attempt by CFG to suggest that it is not a Delaware corporation is unavailing.

   g. <u>The Charging Order did not Violate any Statute of Limitations.</u>

   CFG's argument concerning the three-year statute of limitations for ERISA claims fails for numerous reasons. First, the Charging Order is not the result of any claim, but rather is a tool for

enforcing the pre-existing judgment against CFG. *See* Conn. Gen. Stat. § 34-171. Connecticut has a twenty-year statute of limitations for enforcing judgments. *See Chro ex rel. Doe v. Travel & Tour Servs.*, CV 92 0519557, 1994 Conn. Super. LEXIS 1806 (Conn. Super. Ct. July 12, 1994). Thus, the Charging Order was issued well within the relevant statute of limitations. Secondly, Universitas claims were not brought under ERISA, and CFG's attempt to apply ERISA to this dispute is barred by res judicata and/or collateral estoppel. *See Universitas Educ.*, 2012 U.S. Dist. LEXIS 79295 at *6-*7 ("[Nova] next argues that the arbitrator manifestly disregarded the law by permitting Petitioner to assert state law claims in violation of the preemption provision of the Employee Retirement Income Security Act ("ERISA"). This argument, too, is meritless."). Furthermore, COT was not a welfare benefit plan subject to ERISA – COT was a sham that Mr. Carpenter used to defraud insurance carriers. *See Carpenter*, 190 F. Supp. 3d at 281 (explaining that purpose of COT was to perpetrate fraud upon insurance carriers); *see also PHL Variable Ins. v. Charter Oak Tr.*, No. HHDCV106012621, 2015 Conn. Super. LEXIS 2774, at *4 (Conn. Super. Ct. Nov. 4, 2015) ("There is voluminous evidence to support the plaintiff's statement that "the Charter Oak Trust was a fraud.'").

V.    **CONCLUSION**

For the aforementioned reasons, Universitas respectfully requests that the Court deny CFG's motion to vacate in its entirety, and grant any other relief the Court deem just and equitable.

Dated:    September 15, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of September, 2022, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and to all counsel of record.

/s/ Ilan Markus_____

Ilan Markus, Esq.
